577 P.2d 307 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Thomas DURAN, Defendant-Appellant.
No. 76-203.
Colorado Court of Appeals, Div. III.
January 5, 1978.
Rehearing Denied February 2, 1978.
Certiorari Denied April 17, 1978.
*308 J. D. MacFarlane, Atty. Gen., Jean E. Dubofsky, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., David K. Rees, Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, Colorado State Public Defender, James F. Dumas, Jr., Chief Deputy State Public Defender, Ilene P. Buchalter, Deputy State Public Defender, Denver, for defendant-appellant.
KELLY, Judge.
Thomas Duran was convicted by a jury of two counts of first-degree murder. The trial court reduced one of the convictions to second-degree murder because of an erroneous verdict form. Duran appeals, contending: (1) The jury was incorrectly instructed on self-defense; (2) the lesser offense of criminally negligent homicide should have been submitted to the jury; (3) there was insufficient evidence of premeditation to sustain the convictions for first-degree murder; and (4) it was plain error to omit second-degree murder from one of the verdict forms. We conclude that the first two allegations of error are meritorious and reverse.
The record reflects that after an evening of holiday celebration at a drinking and dancing establishment in Trinidad, Colorado, the two victims, Jack Tortorelli and Dale Van Matre, and their wives went to a restaurant for coffee. Duran and Mr. and Mrs. Edward Bonney were seated at a table in the restaurant when the Van Matres and Tortorellis arrived. After paying their bill, Duran and the Bonneys left the restaurant, but returned a short time later and approached *309 the table where Van Matre and Tortorelli were seated.
Although it is unclear who initiated the fist fight which led to the deaths, it is undisputed that either Duran or Bonney asked Van Matre if he wanted to continue the fight which had erupted earlier at a nightclub. Although Van Matre declined, what can only be described as a brawl ensued. Duran produced a large hunting knife and was disarmed after having been wrestled to the floor where he had been kicked around the head and face by one of the patrons. Duran extricated himself from the fracas and was then chased from the restaurant by a group of customers. One of the patrons who had helped disarm him stated to Tortorelli, "He's had enough," or, "Let's go finish our coffeehe doesn't want to fight or nothing." Tortorelli was heard to yell, "There he goeslet's get him."
Duran was able to reach his car, which was parked nearby, and lock himself inside. One witness saw Tortorelli and another customer kicking at the windows of Duran's car. Although no witness observed the shooting of Tortorelli, there was testimony that shots were fired, and Tortorelli stumbled back into the restaurant and collapsed near the washroom.
Duran immediately re-entered the restaurant with a gun. Van Matre, who was on his knees beating Bonney, got up and turned toward Duran. As the two men approached each other, Bonney urged Duran to kill Van Matre. As the distance between the two men narrowed, Duran attempted to stop Van Matre's approach by placing his left hand on Van Matre's right shoulder. Notwithstanding, Van Matre continued his approach; whereupon Duran raised the gun and shot Van Matre.
Duran first contends the trial court erred in refusing his tendered instructions on his right to act on appearances in self-defense. As stated in Young v. People, 47 Colo. 352, 107 P. 274 (1910):
"Apparent necessity, if well grounded and of such a character as to appeal to a reasonable person, under like conditions and circumstances, as being sufficient to require action, justifies the application of the doctrine of self-defense to the same extent as actual or real necessity. . ."
"When a person has reasonable grounds for believing, and does in fact actually believe, that danger of his being killed, or of receiving great bodily harm, is imminent, he may act on such appearances and defend himself, even to the extent of taking human life when necessary, although it may turn out that the appearances were false, or although he may have been mistaken as to the extent of the real or actual danger."
See People v. Tapia, 183 Colo. 141, 515 P.2d 453 (1973); People v. LaVoie, 155 Colo. 551, 395 P.2d 1001 (1964).
Where, as here, the evidence raises the question of self-defense, instructions on apparent necessity and acting on appearances as outlined in Young v. People and People v. Tapia, supra, should be given. The trial court's failure to do so after timely request by the defendant constitutes reversible error. Contrary to the People's contention, it was for the jury to determine whether Duran was justified in killing Van Matre and Tortorelli in defense of himself and another person, and whether Duran was the initial aggressor who did not communicate an intent to withdraw. People v. Thompson, 187 Colo. 252, 529 P.2d 1314 (1975); cf. People v. Salas, Colo., 538 P.2d 437 (1975).
We agree with Duran's contention that the trial court erred in refusing to instruct the jury on criminally negligent homicide. The statutory scheme in Colorado relating to homicide is unique. Section 18-3-105, C.R.S.1973, provides:
"(1) A person commits the crime of criminally negligent homicide if he causes the death of another person . . .
(b) Intentionally in the good faith but unreasonable belief that one or more grounds for justification exist under §§ 18-1-701 to 18-1-707." *310 Here, Duran defended on the theory that the degree of force he used was justified in self-defense and in the defense of Edward Bonney. That the jury rejected Duran's self-defense argument and convicted him of two counts of first-degree murder indicates that it could have found that although Duran believed that deadly force was necessary, such belief was not reasonable.
Although criminally negligent homicide is an offense, it is integrally related to a claim of self-defense since under it a reduction in the degree of criminal culpability may result if there is present a good faith, but unreasonable, belief that justification exists. See People v. Bramlett, Colo., 573 P.2d 94 (1977); § 18-3-105, C.R.S.1973. As the court pointed out in Bramlett, the offense of criminally negligent homicide has expanded the concept of self-defense. Our legislature has provided that, although a good faith but unreasonable belief that justification exists is not exculpatory, it is nonetheless a mitigating factor in determining criminal culpability in a homicide case. See People v. Bramlett, supra. Here, since the jury could reject Duran's self-defense argument, but could still conclude that he held an unreasonable good faith belief that sufficient justification existed to use deadly force, they should have been instructed on the lesser offense of criminally negligent homicide. The trial court's failure to do so constitutes reversible error.
Duran further contends that the evidence of premeditation is insufficient to support verdicts of first-degree murder. Premeditation requires that the design to kill precede the killing by an appreciable length of time; but the time need not be long. People v. Sneed, 183 Colo. 96, 514 P.2d 776 (1973). Here, the prosecution's evidence of the earlier argument between the parties, coupled with Duran's conduct at the restaurant, which included pulling a hunting knife and returning to the restaurant with a gun after the Tortorelli killing, is sufficient to sustain the jury's finding of premeditation as to both killings. See People v. Norwood, Colo.App., 547 P.2d 273 (1975).
Duran argues that the court's affirmative defense instruction in the language of Colo.J.I.Crim. 7:1 was ambiguous and confusing in that it did not properly inform the jury that the prosecution has the burden of negating self-defense. He further urges that the jury should not have been instructed in the language of § 18-1-704(3)(a), C.R.S.1973, concerning those situations in which self-defense is not available. We have considered both arguments, and find them to be without merit. Since this case must be retried, and it is unlikely that an erroneous verdict form will again be prepared, we do not reach the question whether the trial court's reduction of the jury verdict to second-degree murder and the imposition of concurrent sentences cured the error in the verdict form.
On retrial, the question may arise whether Duran may be tried for first-degree murder regarding the Tortorelli killing. We note that Duran was not acquitted by the finder of fact on the first-degree murder charge in the Tortorelli killing, but that the jury's verdict was reduced to second-degree murder because of an erroneous verdict form. Thus § 18-1-301, C.R.S.1973, is not applicable to this situation. On retrial Duran may again be charged with first-degree murder for the Tortorelli killing. Colo.Const. Art. II, Sec. 18; Young v. People, 54 Colo. 293, 130 P. 1011 (1913).
The judgment is reversed and the cause remanded with directions that Duran be given a new trial on both counts of first-degree murder, and that the jury be instructed on acting on appearances in self-defense and criminally negligent homicide if those issues are raised by the evidence at retrial.
VanCISE and STERNBERG, JJ., concur.