The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Douglas James ALWARD, Defendant-Appellant.

No. 79CA0980.

Colorado Court of Appeals, Div. I.

June 17, 1982.

Rehearing Denied July 15, 1982.

Certiorari Granted Nov. 15, 1982.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, William Morris, Asst. Attys. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Jody Sorenson Theis, Asst. State Public Defender, Denver, for defendant-appellant.

ENOCH, Judge.

Defendant appeals his conviction of second degree burglary, first degree assault, and attempted first degree murder. We affirm.

About 8:30 a.m. on April 30, 1978, Edward Scown descended the stairs from the second floor of his Durango home and discovered defendant (age 16) standing about four feet from him, brandishing a hunting knife with a 5-inch blade. After Mr. Scown demanded that defendant leave, defendant lunged at him and stabbed him; a struggle ensued, during which Mr. Scown received another stab wound, while calling to his

wife to contact the sheriff. Defendant then started up the stairs after Mrs. Scown. Mr. Scown reached for his .22 caliber rifle, pointed it at defendant, and ordered him again to leave the house. Although defendant had clear access to the stairway leading out of the house, and even put the knife down momentarily, he did not leave, but rather seized the knife and again moved toward Mrs. Scown. Mr. Scown shot defendant in the shoulder, but defendant continued toward Mrs. Scown and stabbed her three times. Mr. Scown then attacked defendant, using the rifle as a club, and in the ensuing struggle, received multiple additional stab wounds. Mrs. Scown, armed with a small steam iron, joined in the fray, beating defendant on the back until finally defendant stated that he just wanted to get out of the house. The Scowns readily assented, and after defendant left, the Scowns drove themselves 15 miles to a hospital where they spent several days in the intensive care unit. Defendant was apprehended the next day, when he was found hiding in a cabin near the Scowns' residence.

## I.

### Jurisdiction

█ Defendant contends that the district court lacked jurisdiction over him because he was a juvenile and improperly granted the prosecution leave to commence criminal proceedings by filing, in the district court, an information charging defendant with commission of a felony pursuant to § 19–1–104(4)(b)(II), C.R.S.1973 (1978 Repl.Vol. 8). We disagree.

Section 19–1–104(4)(b)(II) allows the prosecution to charge a juvenile with the commission of a felony in district court if he is 16 years old or older, is charged with commission of a class 2 or 3 felony, and "has been adjudicated a delinquent child within the previous two years." This prior adjudication must have been based on an act committed by defendant which would have been a felony if committed by an adult.

Defendant contends that he was adjudicated a delinquent more than two years prior to the offenses in this case and, therefore, should not have been tried in district court. In the former proceeding, defendant admitted, on April 26, 1976, allegations of arson contained in a petition for delinquency. The trial court, in a written order dated May 10, 1976, entered its finding that the allegations of the petition were "supported by evidence beyond a reasonable doubt" and entered judgment that defendant was a delinquent child. Hence, the offenses in this case occurred more than two years after defendant admitted the allegations in the petition, but less than two years after the judgment of delinquency was entered. Therefore, the issue is whether defendant was adjudicated a delinquent at the time he admitted the facts in the petition, or at the time the trial court made its written findings and entered its judgment of delinquency.

We hold that the date of adjudication was May 10, 1976, the date the court made its written findings and entered judgment. Contrary to defendant's contention, at the time of an advisement hearing under C.R.J.P. 3 and the court's acceptance of a juvenile's admission to a petition of delinquency, the court is not statutorily required to make an adjudication of delinquency, or a finding that the facts in the petition have been substantiated beyond a reasonable doubt. Common sense dictates that the trial court be allowed to deliberate following the juvenile's admissions before it decides whether the facts in the petition are supported beyond a reasonable doubt as is required by § 19–3–106(6)(a), C.R.S.1973 (1978 Repl.Vol. 8). The procedures for postponing a formal adjudication of delinquency contained in § 19–3–106(3) C.R.S.1973 (1978 Repl.Vol. 8), need be followed only when the trial court has made its finding that the allegations of the petition are supported beyond a reasonable doubt and wishes to defer adjudication subject to conditions placed on defendant. They do not apply here where the trial court did not make any findings on April 26, 1976, except that there was a factual basis for the juvenile's admission. C.R.J.P. 3.

**330**

Therefore, defendant was properly adjudicated delinquent on May 10, 1976, and it was not error for the district court in this case to allow the defendant to be charged with the commission of a felony in district court.

## II.

### *Speedy Trial*

Defendant contends that the charges against him should have been dismissed because of failure to comply with § 18–1–405, C.R.S.1973 (1978 Repl.Vol. 8) and Crim.P. 48, requiring defendant be brought to trial within six months from the entry of a plea of not guilty. We disagree.

Defendant entered a plea of not guilty on July 14, 1978, and trial was set for November 27. However, defendant escaped from custody October 26, and was not apprehended until May 15, 1979. A new trial date was set and trial commenced August 27, 1979.

In computing the six months within which defendant must be brought to trial, § 18–1–405(6)(d), C.R.S.1973 (1978 Repl.Vol. 8) excludes "the period of delay resulting from the voluntary absence or unavailability of defendant. . . ."

■ It is important to note that neither the statute, nor the identical language in Crim.P. 48, excludes only the "period of defendant's absence." Rather, both provisions contemplate the exclusion of the period of delay resulting from defendant's absence, which may, in some cases, be longer than merely the period of defendant's absence. *Russell v. Anchorage,* 626 P.2d 586 (Alaska 1981). Accordingly, at a minimum, this rule requires exclusion of the period of defendant's absence; the period of time after defendant is apprehended necessary to notify the proper authorities of defendant's return, *People v. Gillings,* 39 Colo.App. 387, 568 P.2d 92 (1977); and a reasonable period after notification of defendant's return to re-docket the case and prepare for trial. *See State v. Sherman,* 217 Kan. 326, 536 P.2d 1373 (1975) (interpreting Kan.Stat. Ann., § 22–3402 (1981)), and *State v.*

*Welch,* 212 Kan. 180, 509 P.2d 1125 (1973). As the Kansas Supreme Court in *Welch, supra,* stated:

"The state should be allowed a reasonable time to have the trial court reschedule the case for trial. This period should be considered as the fault of the defendant. After expiration of a reasonable time further delay should be considered to be the fault of the state. Each case, of necessity, must be determined on its own facts and a more specific rule is not possible in view of the broad language of the statute." 212 Kan. at 184, 509 P.2d at 1128–29.

■ Here, the People originally had until January 14, 1979, to bring defendant to trial. Two hundred days elapsed between the escape and the time the court was apprised of defendant's return. This delay extended the time for bringing defendant to trial to August 2, 1979. In addition, 31 days elapsed between the time the court learned of defendant's return, and the setting of a trial date. We do not view this as an unreasonable time for docketing the trial, and hold that it was part of the delay resulting from defendant's voluntary absence. This additional delay extended the time for bringing defendant to trial to September 2, 1979. Since the trial commenced on August 27, 1979, defendant's statutory right to a speedy trial was not denied.

■ Defendant's argument that the six-month time limit may not be extended unless the prosecution requests a continuance is based on an erroneous interpretation of the statute. If exceptional circumstances exist, the prosecution may obtain a continuance and an extension of the speedy trial time without defendant's consent, even though one of the other events enumerated in § 18–1–405(6), C.R.S.1973 (1978 Repl.Vol. 8), has not occurred. *See also* Crim.P. 48(b)(6); *People v. Colantonio,* 196 Colo. 242, 583 P.2d 919 (1978). However, the speedy trial deadline may be extended without a prosecution continuance if, as here, one of these other events does occur.

## III.

### Cross-examination of Defendant's Psychiatrist

Defendant's theory of the case was that he lacked specific intent to kill Mr. and Mrs. Scown, and defendant presented the expert testimony of a psychiatrist to support this theory. The psychiatrist testified that adult labels pertaining to mental capacity are generally inapplicable to juveniles, that defendant was suffering from "adolescent adjustment reaction," and that adult labels for defendant's condition such as "sociopathic" or "antisocial personality disorder" were inappropriate. The psychiatrist further testified that in his opinion, as a result of this condition, defendant did not intend to kill the Scowns and was behaving impulsively.

On cross-examination, the prosecution sought to clarify the psychiatrist's characterization of defendant's mental condition by asking again whether defendant had an anti-social personality. The psychiatrist responded that defendant has an "adolescent adjustment reaction with a trend toward anti-social personality." The prosecution persisted with its efforts to determine to what extent defendant had developed an anti-social personality disorder by asking whether defendant was "well on the road to becoming an anti-social personality," and then inquiring as to whether this condition was likely to improve or get worse in the future.

After laying this foundation, the prosecution sought to undermine the psychiatrist's evaluation of defendant's mental condition by demonstrating the psychiatrist's ignorance of specific instances of defendant's conduct. The prosecution asked the psychiatrist if he was aware that defendant had escaped from custody, had been arrested carrying a concealed weapon, had threatened to kill witnesses, his father, and the person who testified against him in a prior incident, and had threatened to "blow up all of Durango, Colorado." Upon learning of these incidents, the psychiatrist acknowledged that he was less optimistic about defendant's prognosis for rehabilitation.

The defendant objected to any questions relating to defendant's future condition on the grounds that such inquiries were irrelevant. However, the trial court overruled the objections, finding that defendant had opened the door to such cross-examination by asking the psychiatrist about the label that should be attached to defendant's mental condition. We agree with the trial court.

Within reasonable limits, the trial court controls the scope of cross-examination. *Vigil v. People,* 196 Colo. 522, 587 P.2d 1196 (1978). And, it is fundamental that an expert witness may be cross-examined concerning the basis of his opinion. *Ross v. Colorado National Bank,* 170 Colo. 436, 463 P.2d 882 (1969). *See also* Colorado Rules of Evidence 705. Where, as here, an expert testifies concerning the defendant's mental state and bases his testimony, in part, on defendant's conduct, it is not error to allow the prosecution to ask the expert whether his opinion is affected by other examples of defendant's conduct which were unknown to the expert. *See State v. Dargatz,* 228 Kan. 322, 614 P.2d 430 (1980); *State v. Rogers,* 389 A.2d 36 (Me.1978); *King v. State,* 75 Wis.2d 26, 248 N.W.2d 458 (1977); *McCormick on Evidence* § 191 (E. Cleary 2d ed. 1972). *See also* Colorado Rules of Evidence 404(a)(1). The prosecution's questions concerning defendant's prognosis were nothing more than an attempt to establish the severity of defendant's mental condition at the time of the offense.

Finally, the prosecution's questioning did not go beyond the scope of direct examination; it merely sought clarification of the psychiatrist's diagnosis.

## IV.

### Defendant's Other Arguments

We find no merit in defendant's contention that the trial court erred in denying his motion for change of venue which he made prior to jury voir dire. The decision to grant a change of venue lies within the

sound discretion of the trial court, *People v. McCrary*, 190 Colo. 538, 549 P.2d 1320 (1976). Our review of the record convinces us that the pretrial publicity did not justify a change of venue, and there was no abuse of discretion by the trial court.

■ Defendant's contention that the trial court erred in instructing the jury on the definition of "after deliberation" is also without merit. The instruction given by the trial court, although slightly different from the pattern instruction in *Colo. J.I.-Crim.* 5:9–5 (1972), was consistent with applicable law. The instruction given stated that the time between the forming of the intent to do the act and the act itself must be appreciable, but "that time need not be long." The phrase "the time need not be long" has been endorsed by the Supreme Court when discussing the elements of first degree murder. *People v. Sneed*, 183 Colo. 96, 514 P.2d 776 (1973). *See People v. Maes,* 43 Colo.App. 365, 609 P.2d 1105 (1980); *People v. Duran,* 40 Colo.App. 302, 577 P.2d 307 (1978).

Contrary to defendant's contention, there is sufficient evidence to support defendant's conviction for attempted first degree murder.

Finally, we find no error in the trial court's denial of defendant's motion for a mistrial based on prosecution statements made during closing argument.

Judgment affirmed.

VAN CISE, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent. I disagree with the majority's holding that the six-month speedy trial period includes a reasonable period after notification to the prosecution of defendant's return to redocket the case and prepare for trial.

The majority's reliance upon Kansas and Alaska authority is misplaced. In *State v. Welch*, 212 Kan. 180, 509 P.2d 1125 (1973), the court rested its ruling upon the permissible limits of the Kansas speedy trial statute, Kan.Stat.Ann., 22–3402 (1981), which is dissimilar to the Colorado statute, § 18–1–405, C.R.S.1973 (1978 Repl.Vol. 8). The language in *Welch* which was quoted in the majority opinion here was characterized as dictum by the Kansas Supreme Court in *State v. Sherman,* 217 Kan. 326, 536 P.2d 1373 (1975). As for the holding in *Russell v. Anchorage,* 626 P.2d 586 (Alaska 1981), it was limited to the situation in which, by virtue of the defendant's inaction, no progress is made in the normal pretrial process before his disappearance. That factor is not present in this case.

The Colorado Supreme Court has been diligent in protecting a defendant's statutory right to a speedy trial. *See, e.g., People v. Moye,* Colo., 635 P.2d 194 (1981); *Marquez v. District Court,* Colo., 613 P.2d 1302 (1980); *Sweet v. Myers,* Colo., 612 P.2d 75 (1980); *Sanchez v. District Court,* Colo., 612 P.2d 519 (1980); *People v. Colantonio,* 196 Colo. 242, 583 P.2d 919 (1978); *People v. Gallegos,* 192 Colo. 450, 560 P.2d 93 (1977); *Harrington v. District Court,* 192 Colo. 351, 559 P.2d 225 (1977); *Saiz v. District Court,* 189 Colo. 555, 542 P.2d 1293 (1975); *People ex rel. Coca v. District Court,* 187 Colo. 280, 530 P.2d 958 (1975). In *Harrington, supra,* the Court held that the language of § 18–1–405, C.R.S.1973 (1978 Repl.Vol. 8) "is mandatory and leaves no discretion for a court to fashion exceptions for the six-month rule apart from those delineated in the statute." The speedy trial deadline cannot be extended even when the district court calendar does not permit trial within six months. *Carr v. District Court,* 190 Colo. 125, 543 P.2d 1253 (1975). Thus, in Colorado, the statutory guarantee of a speedy trial is not as flexible as the majority believes.

In my view § 18–1–405(6)(d), C.R.S.1973 (1978 Repl.Vol. 8) provides for an exclusion of time strictly limited to the period of actual unavailability of the defendant. However, the People are not prevented from obtaining additional time in which to prepare for trial after the defendant's return. Section 18–1–405(6)(g), C.R.S.1973 (1978 Repl.Vol. 8) provides for the following

exclusion of time from the speedy trial period:

"The period of delay not exceeding six months resulting from a continuance granted at the request of the prosecuting attorney, without the consent of the defendant, if:

. . . .

(II) The continuance is granted to allow the prosecuting attorney additional time in felony cases to prepare the state's case and additional time is justified because of exceptional circumstances of the case and the court enters specific findings with respect to the justification."

The majority reasons that, since the prosecution may obtain a continuance for a reason other than defendant's escape, the speedy trial deadline may be extended automatically without a prosecution-requested continuance. I believe that the prosecution must request the continuance and convince the court that exceptional circumstances justify the continuance. In addition, the trial court must enter specific findings concerning the exceptional circumstances which justify the continuance. This statutory scheme offers significant additional protection to the defendant's speedy trial guarantee, and cannot be bypassed by judicial permission for a reasonable period of delay beyond the date of the defendant's return from escape. The General Assembly, if it chooses, may amend the statute to provide for an automatic extension of time. The judiciary may not. *See Colo. Const.,* Art. III; *People ex rel. VanMeveren v. District Court,* 195 Colo. 34, 575 P.2d 4 (1978).