The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Fidel J. TRUJILLO, Defendant–Appellant.

No. 97CA0869.

Colorado Court of Appeals, Division V.

Feb. 4, 1999.

Certiorari Denied Sept. 7, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Evan W. Jones, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

David F. Vela, Colorado State Public Defender, Ellen K. Eggleston, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by Judge DAVIDSON

Defendant, Fidel J. Trujillo, appeals from the judgment of conviction entered following his guilty plea to one count of vehicular homicide. We affirm.

On November 7, 1996, defendant was charged by direct filing in district court with one count of vehicular homicide while under the influence of alcohol, one count of vehicular homicide by recklessness, two counts of vehicular assault, and one count of third degree assault. The information was later amended to add one count of perjury as a result of defendant's having lied to police about the circumstances of the offenses.

The charges stemmed from a one-car automobile accident that occurred on March 10, 1996, in which defendant was the driver. One of defendant's passengers was killed, and the other two were seriously injured.

Defendant moved to dismiss the charges against him on the ground that the court lacked jurisdiction over his case because the People had not complied with the requirements of the statute that enumerates the conditions under which a juvenile may be charged by a direct filing in district court. More specifically, defendant maintained that the court lacked jurisdiction because the information was not filed within two years of his April 4, 1994, adjudication of delinquency.

The trial court denied the motion. Defendant then filed a petition for relief in the nature of writ of prohibition or mandamus pursuant to C.A.R. 21, seeking review of the trial court's order. The supreme court denied the petition.

Pursuant to a plea agreement, defendant thereafter pled guilty to one count of vehicular homicide by recklessness, and the People dismissed the remaining charges against him.

I.

■ Defendant's sole contention on appeal is that the trial court lacked jurisdiction over his case because the People did not file the information within two years of his previous delinquency adjudication. We do not agree.

As pertinent here, § 19–2–517(1)(a)(III), C.R.S.1998, provides that:

A juvenile may be charged by the direct filing of an information in the district court or by indictment only when ... *[t]he juvenile has, within the two previous years, been adjudicated a juvenile delinquent* for a delinquent act that constitutes a felony, is sixteen years of age or older, and allegedly has committed a crime defined by section 18–1–105, C.R.S., as a class 3 felony .... (emphasis added)

We note that, when the charges at issue here were filed, the statute governing direct filings against juveniles was numbered § 19–2–805. *See* Colo. Sess. Laws 1987, ch. 138, § 19–2–805(1)(b) at 740. The statute has since been amended and renumbered, but no substantive amendments were made to the portions of the statute pertinent to this appeal. *See* Colo. Sess. Laws 1996, ch. 283, § 19–2–517(1)(a)(III) at 1641.

Here, defendant committed the current offenses within two years of his adjudication of delinquency, but the People did not file the information within two years of that previous adjudication.

Defendant contends that the critical two-year period is the period between the date of his previous adjudication of delinquency and the date of the filing of the information charging him with the current offenses. The People contend that the two-year period should be measured from the date of the previous adjudication to the date of defendant's commission of the current offense, not the date of the direct filing. We agree with the People.

Our goal in construing any statute is to ascertain and give effect to the intent of the General Assembly. To determine legislative

intent, we look first to the language of the statute itself, giving the words and phrases used their plain and ordinary meaning. *People v. District Court*, 713 P.2d 918 (Colo. 1986). When the statutory language is clear and unambiguous, it must be interpreted as written, without resort to interpretive rules and statutory construction. *People v. Zapotocky*, 869 P.2d 1234 (Colo.1994).

If, however, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply other rules of statutory construction to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation. *People v. Terry*, 791 P.2d 374 (Colo.1990). Among the sources a court may consider in determining legislative intent are statutes concerning the same or similar subjects, and the consequences of a particular construction. Sections 2–4–203(1)(d) and (e), C.R.S.1998. A legislative policy declaration at the outset of the legislation also may serve as a guide to legislative intent. *Weld County School District RE–12 v. Bymer*, 955 P.2d 550 (Colo. 1998).

We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreasonable or absurd result. *People v. Terry, supra*.

We recognize that the language of § 19–2–517(1)(a)(III) is susceptible of the interpretation urged by defendant. However, we conclude that such a construction is contrary to the legislative intent, and that the People's interpretation of the statute furthers the General Assembly's purpose in enacting the statute.

The Legislative Declaration in the Children's Code, of which § 19–2–517(1)(a), C.R.S.1998, is a part, provides that the purpose of the Code is to:

> protect and improve the public safety by creating a system of juvenile justice that will appropriately sanction juveniles who violate the law. The general assembly further finds that, while holding paramount the public safety, the juvenile justice system shall take into consideration the best interests of the juvenile in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society.

Section 19–2–102, C.R.S.1998.

Based on that legislative declaration, we conclude that the clear purpose of § 19–2–517(1)(a)(III) is to discourage recidivism and encourage juveniles previously adjudicated delinquent to lead law-abiding lives in the future. The statute accomplishes this goal by putting juveniles adjudicated delinquent on notice that if they fail to take advantage of the opportunity to reform and subsequently commit another crime, they may be charged as adults by direct filing in district court and thus be subject to more severe penalties.

Measuring the pertinent two-year period from the date of the previous adjudication to the date of the commission of the current offense furthers this goal by giving juveniles a concrete period within which to reform their behavior and ensuring that the date of the triggering event for the subsequent offense is within their control. Focusing on the defendant's conduct is consistent with the legislative purpose of encouraging juveniles to reform their behavior and to become productive members of society.

Defendant's interpretation of the statute focuses on the People's conduct, rather than on the juvenile's conduct, and would result in there being different consequences for a juvenile's conduct depending upon the date the People file the information.

If we were to adopt this interpretation, juveniles who commit crimes within two years of their previous adjudication could prevent the People from using the direct filing statute against them by evading detection until two years after the date of the previous adjudication. Indeed, the People's filing of the information in this case was substantially delayed because defendant told the police that someone else had been driving the car. Adopting defendant's construction of the statute would thus reward him for having misled the police about the circumstances of the accident, and would encourage other juveniles to engage in similar conduct.

Hence, defendant's construction of the statute leads to an unreasonable result that is without support in either the statute itself or the General Assembly's statement of purpose in the legislative declaration.

Our conclusion is bolstered by our analysis of the habitual offender statute, which provides for enhanced sentencing for certain repeat adult offenders.

Section 16–13–101(1.5), C.R.S.1998, provides that any person convicted of certain crimes who, "within ten years of the date of the commission of the said offense, has been twice previously convicted" of a felony shall be adjudged an habitual criminal and shall be more harshly punished for the current offense than he would have been had he not been adjudged an habitual criminal.

■ The purpose of the habitual criminal statute, like that of § 19–2–517(1)(a), is to punish more severely those individuals who show a propensity toward repeated criminal conduct. *People v. Gimmy,* 44 Colo.App. 352, 620 P.2d 42 (1980), *aff'd,* 645 P.2d 262 (Colo.1982); *see also People v. District Court,* 711 P.2d 666 (Colo.1985). The corresponding deterrent purpose of § 16–13–101(1.5) is to put the defendant on notice that future criminal conduct will result in more severe penalties. *People v. Nees,* 200 Colo. 392, 615 P.2d 690 (1980).

Unlike the direct filing statute, § 16–13–101(1.5) expressly provides that the pertinent period is measured from the date of the previous convictions to the date of the commission of the subsequent offense. While we recognize that the absence of such language in § 19–2–517(1)(a)(III) could be relied on to support defendant's construction, we nevertheless conclude that, in light of the similarity in purpose between the two statutes, the two-year period provided for in § 19–2–517(1)(a)(III) should also be measured from the date of the previous adjudication to the date of the commission of the current offense.

We find further support for our conclusion in *People v. Alward,* 654 P.2d 327 (Colo.App. 1982). In *Alward,* a division of this court held that, for purposes of the direct filing statute, the date of the previous adjudication of delinquency is the date the court made its written findings and entered judgment, not the date on which the juvenile admitted allegations in the petition for delinquency.

In rejecting the contention that the trial court lacked jurisdiction because the People had filed the information outside the two-year period, the *Alward* court measured the two-year period from the date of the previous adjudication to the date of the commission of the second offense, not the date of the direct filing. Although the issue on appeal in *Alward* was not whether the triggering event for the subsequent offense was the date of commission of the offense or the date of the direct filing, the court's use of the former in its calculation is instructive and reflects its implicit determination that the General Assembly intended the two-year period to be measured from the date of the previous adjudication to the date of the commission of the subsequent offense.

■ In reaching this conclusion, we are not unmindful of the rule of lenity which requires that ambiguous criminal statutes be construed in favor of the accused. *See People v. Terry, supra.* However, giving statutory words their full meaning in the context in which they are used does not violate the rule of lenity, and that rule should not be used to defeat the evident intent of the General Assembly. *See People v. District Court, supra.*

Accordingly, we conclude that the trial court properly exercised jurisdiction over defendant under § 19–2–517(1)(a)(III) because he committed the charged offenses within two years of his previous adjudication of delinquency.

The judgment is affirmed.

Judge BRIGGS and Judge VOGT concur.