Gary HENSLEY, Plaintiff–Appellant,

v.

TRI–QSI DENVER CORP., d/b/a Global Integration Corp., a Colorado corporation, Defendant–Appellee.

No. 03CA0915.

Colorado Court of Appeals, Div. I.

Aug. 12, 2004.

David Lichtenstein, Denver, Colorado, for Plaintiff–Appellant.

Hanes & Schutz, P.C., Richard W. Hanes, Timothy J. Schutz, Colorado Springs, Colorado, for Defendant–Appellee.

Opinion by Judge CRISWELL.*

In this employment dispute, plaintiff, Gary Hensley, appeals from the judgment entered against him on a jury verdict denying his claim for overtime pay from his former employer, Tri–QSI Denver Corp. (the company), and from the award of punitive damages to the company on its breach of fiduciary duty counterclaim. We affirm, but vacate the amount awarded as punitive damages and remand for further proceedings.

From July 1999 to January 2001, Hensley was employed by the company as a Deployment/Field Engineer II. He also later worked for the company as a project manager from August 2001 until his employment was terminated by the company in February 2002.

In March 2002, Hensley sued a principal of the company, the company's general manager, and the company to recover his tools and equipment that the company allegedly had retained following his termination. The company asserted counterclaims against Hensley, including a claim for breach of fiduciary duty and one for breach of contract. Hensley then amended his complaint to seek overtime pay under the Fair Labor Standards Act (Act), 29 U.S.C. § 201, et seq., for hours he had worked in excess of forty per workweek, during his first period of employment.

After a jury trial, verdicts were returned in favor of the company and against Hensley on all three claims. The company was awarded $131,109.52 on its breach of contract claim and $5,451.39 on its breach of fiduciary duty claim, as well as $75,000 in punitive damages on this latter claim.

I.

Hensley first contends that the trial court erred in instructing the jury on the Act's "computer professional" exemption. We disagree.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2003.

While the transcript of testimony has not been included in this record on appeal, the documentary evidence was sufficient to show that Hensley worked more than forty hours per week on numerous occasions. Based on this evidence, Hensley asserted that he was entitled to overtime payments totaling some $51,000.

Under 29 U.S.C. § 207(a)(1) (2003), employers are generally required to pay overtime to an employee at a rate "not less than one and one-half times the regular rate at which [the employee] is employed," for any hours worked in excess of forty hours per workweek.

Certain employees, however, namely those "employed in a bona fide executive, administrative, or *professional* capacity," are exempt from the Act's maximum hour requirements. 29 U.S.C. § 213(a)(1) (2003)(emphasis added).

The Department of Labor has adopted a regulation, 29 C.F.R. § 541.303(a), (d), based upon which Hensley argues that a "computer professional" does not attain that status by working with computer hardware. He argues that the regulation requires that the worker must be skilled in the computer software field to be a "professional" and, thus, within the statute's exemption.

Here, in instructing the jury that "[e]mployers are not required to pay overtime compensation to employees that are computer professionals," the trial court failed to differentiate between those whose expertise and primary job functions related to computer hardware and those skilled in the computer software field.

To cure this alleged instructional deficiency, Hensley submitted a proposed instruction that would have quoted the entirety of the federal regulation. That instruction was rejected by the court.

Hensley has not provided to us a transcript of testimony that was presented in the trial court. It is true that his written job description was placed in evidence, and from the face of this exhibit, it could be found that Hensley's primary duties related to computer hardware. Nevertheless, without a review of the other evidence upon this subject, which might well have established that Hensley was a computer professional even within his interpretation of the regulation, we cannot assess his claim of instructional error. Without a record, we must presume that the court did not instruct upon the limitation allegedly established by the regulation because, irrespective of the proper meaning of the regulation, the evidence would not support a finding that Hensley's actual job functions fell within the regulation's exception. *See Fleet v. Zwick,* 994 P.2d 480 (Colo.App.1999).

## II.

Hensley also contends that the trial court erred in not reducing the punitive damages awarded by the jury on the company's breach of fiduciary duty counterclaim to the amount of actual damages awarded on that claim. We agree in part.

The statute governing the award of punitive damages, § 13–21–102(1)(a), C.R.S. 2003, provides:

In all civil actions in which *damages are assessed by a jury for a wrong done to the person or to personal or real property,* and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. *The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.*

(Emphasis added.)

Under this provision, punitive damages are awardable only for viable tort claims. They cannot be recovered for an ordinary breach of contract. *Decker v. Browning–Ferris Indus., Inc.,* 931 P.2d 436, 446 (Colo.1997)(vacating award of exemplary damages where no tort claim was asserted); *Ballow v. PHICO Ins. Co.,* 878 P.2d 672, 682 (Colo.1994).

Consistent with this limitation, the trial court here separately instructed the jury on the company's breach of contract claim and on its claim for breach of fiduciary duty. Further, recognizing that this latter claim was the only tort claim asserted, the court also instructed the jury as to the award of punitive damages and made the award of such damages conditional upon the company prevailing on its breach of fiduciary duty claim:

If you find in favor of Tri–QSI and award it *damages on its counterclaim of breach of fiduciary duty*, then you shall consider whether you should award punitive damages against Gary Hensley. If you find beyond a reasonable doubt that Gary Hensley acted in a fraudulent, malicious or willful and wanton manner, *you may award a reasonable sum as punitive damages that may not be more than the amount awarded as actual damages.*

(Emphasis added.)

While the jurors awarded only $5,451.39 on the breach of fiduciary duty claim, they returned a verdict awarding $75,000 in punitive damages.

Nevertheless, because the jury had returned a verdict awarding the company in excess of $100,000 in damages on its breach of contract claim, the trial court refused to reduce the jury's punitive damages award. Hensley argues that this was error. We agree.

■■■■ In construing a statute, the intent of the General Assembly must be given effect, which we accomplish by first examining the language of the statute and giving its terms their plain and ordinary meaning. If the statute is unambiguous, we need look no further. If the statutory language is ambiguous, however, we must also examine the "legislative history, prior law, the consequences of a given construction, and the goal of the statutory scheme to ascertain the correct meaning of [the] statute." *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002).

Here, the General Assembly's intent to limit the punitive damages awarded on a particular tort claim to the amount of actual damages awarded on that same claim is evident from the plain wording of the statute. In the first sentence of § 13–21–102(1)(a), the phrase, *"in addition to the actual damages sustained by such party,* [the jury] may award him reasonable exemplary damages," clearly conditions the award of exemplary damages upon an award of actual damages *"for a wrong done to the person or to personal or real property"* (emphasis added). *See Mortgage Fin. Inc. v. Podleski*, 742 P.2d 900, 902 (Colo.1987)(the "language of [§ 13–21–102], 'for a wrong done to the person, or to

personal or real property,' contemplates tortious conduct"). Thus, in giving "consistent, harmonious and sensible effect to all [the statute's] parts," *Bd. of County Commr's v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo.2004)(quoting *People v. Luther, supra*, 58 P.3d at 1015), the second sentence's explicit limitation on the amount of "reasonable exemplary damages" to the "amount of the actual damages awarded" must be read to restrict the punitive damages awarded on a particular tort claim to an amount equal to the actual damages awarded on that same claim.

No amount of punitive damages could have been recovered by the company on its contract breach claim; its breach of fiduciary duty claim was the only tort claim that was presented for resolution. And it is simply illogical to interpret the statutory limitation to refer to the amount of damages awarded on unassociated, nontort claims.

We reject, however, Hensley's assertion that the punitive damages award on the breach of fiduciary duty claim must be strictly limited to the amount of actual damages awarded on that claim.

Under § 13–21–102(2) and (3), C.R.S.2003, the trial court has discretion to increase, decrease, or entirely disallow the exemplary damages assessed by the jury. Under this provision, the court "may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages," provided it is demonstrated that, during the pendency of the case, the behavior or action which is the subject of the claim has continued or the tortfeasor has aggravated the claimant's damages.

Both in its response to Hensley's post-trial motions and in this appeal, the company has argued that it is entitled to an enhanced punitive damages award pursuant to § 13–21–102(3). Whether competent evidence supports such an increase in the punitive damages award, and whether an increased award would be appropriate, are matters for consideration by the trial court upon remand.

Accordingly, we will vacate the punitive damages award and remand the issue of the amount of such damages to the trial court with directions to enter a judgment for such damages in an amount authorized by statute.

 

The judgment is affirmed in all respects, except the amount of punitive damages is vacated, and the case is remanded for the trial court to determine an appropriate amount under the pertinent statute.

Judge PICCONE and Judge NEY *, concur.