The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Deitrich Franz BOSTELMAN,
Defendant–Appellant.

No. 04CA1223.

Colorado Court of Appeals,
Div. I.

Dec. 8, 2005.

Certiorari Granted Aug. 28, 2006.*

* Justice EID does not participate.

Jonathan D. Reppucci, LLC, Jonathan D. Reppucci, Denver, Colorado, for Defendant–Appellant.

WEBB, J.

Defendant, Deitrich Franz Bostelman, appeals the trial court's order denying his Crim. P. 35(c) motion for postconviction relief and a separate order granting the People's motion for revocation. We affirm.

The People alleged that defendant committed a burglary eight days before his fourteenth birthday. They direct filed this charge in district court shortly after defendant turned fourteen. Defendant pled guilty to the burglary and received a twelve-year Department of Corrections (DOC) sentence, suspended on the condition that he successfully complete a six-year sentence in the Youthful Offender System (YOS).

Later, the People moved for revocation because defendant had not complied with the minimum YOS requirements. In response, defendant filed a Crim. P. 35(c) motion challenging the district court's jurisdiction because he had committed the burglary before turning fourteen. The trial court denied the motion, revoked defendant's YOS sentence, and imposed the twelve-year DOC sentence.

## I.

Defendant first contends the trial court lacked jurisdiction under the direct filing statute, § 19–2–517(1)(a)(IV), C.R.S.2005, because he was thirteen years old when he allegedly committed the crime on which the People direct filed in district court, although he was fourteen years old when he was charged. We disagree.

Statutory interpretation is a question of law that appellate courts review de novo. *Hendricks v. People*, 10 P.3d 1231 (Colo.2000). When construing statutes, a court's primary purpose is to effectuate the General Assembly's intent. To determine that intent, courts first look to the statutory language, giving words and phrases their commonly accepted meaning. *People v. Renfro*, 117 P.3d 43 (Colo.App.2004).

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

■ If the statute is unambiguous, we look no further. *Hensley v. Tri–QSI Denver Corp.*, 98 P.3d 965 (Colo.App.2004). We rely on statutory construction principles only when the statute is ambiguous. *Coffman v. Colo. Common Cause*, 102 P.3d 999 (Colo. 2004).

■ We construe a statute as a whole in order to give "consistent, harmonious and sensible effect to all its parts." *Bd. of County Comm'rs v. Costilla County Conservancy Dist.*, 88 P.3d 1188, 1192 (Colo.2004). We avoid constructions that render any part of a statute meaningless, *In re Estate of Hall*, 948 P.2d 539 (Colo.1997); that create a conflict between statutes, *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220 (Colo.2005); or that lead to an illogical or absurd result. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585 (Colo.2005).

■ If statutory language permits alternative constructions, we may also consider the legislative history. *L.E.L. Constr. v. Goode*, 867 P.2d 875 (Colo.1994); *see also* § 2–4–203, C.R.S.2005. We then construe the statute to serve the legislative purpose underlying its enactment. *Coffman v. Colo. Common Cause, supra.*

Section 19–2–517(1)(a)(IV) provides:

(1)(a) A juvenile may be *charged* by the direct filing of an information in the district court or by indictment only when:

. . .

(IV) The juvenile is *fourteen years of age or older*, has allegedly *committed a delinquent act* that constitutes a felony, and has previously been subject to proceedings in district court as a result of a direct filing pursuant to this section or a transfer pursuant to section 19–2–518; except that, if a juvenile is found not guilty in the district court of the prior felony or any lesser included offense, the subsequent charge shall be remanded back to the juvenile court.

(Emphasis added.)

A.

Defendant argues that § 19–2–517(1)(a)(IV) requires a juvenile to have been fourteen years old when the crime on which the prosecutor direct files in district court

was committed. The People respond that a juvenile need only be fourteen years old when charged in district court. In our view, the statute is susceptible of both interpretations, but we conclude the statutory language favors the People's interpretation, which was adopted by the trial court.

At oral argument, both parties acknowledged that the legislative history provides no guidance for interpreting the age fourteen limit in § 19–2–517, C.R.S.2005.

The plain language of § 19–2–517(1)(a)(IV) allows a juvenile to be charged in district court if the juvenile (1) is at least fourteen years old; (2) has allegedly committed a felony; and (3) was previously subject to a district court proceeding. This language does not require that the juvenile have been fourteen years old when either he or she committed the felony or was subject to the previous district court proceeding.

Other subsections of § 19–2–517(1)(a) describe the first condition in identical language ("the juvenile is fourteen years of age or older") and include different crimes as conditions on direct filing. *See* § 19–2–517(1)(a)(I), (II)(A)-(D), (V), C.R.S.2005. But likewise these subsections do not require that the juvenile have been age fourteen when the crime was committed.

In contrast, another subsection, concerning sentencing, applies "if the juvenile is less than sixteen years of age at the time of commission of the crime." Section 19–2–517(3)(a)(III), C.R.S.2005. A similar phrase appears in § 19–2–518(4)(b)(XII) and (XIII), C.R.S.2005, concerning transfers under § 19–2–518. This language shows that the General Assembly was aware it could require a juvenile to be a certain age when the crime is committed. *See People in Interest of C.A.G.*, 903 P.2d 1229 (Colo.App.1995) (a court is not permitted to add an important limitation or qualification to a statute).

Hence, based on the absence of "at the time of commission of the crime" language in § 19–2–517(1)(a)(IV), we discern no legislative intent that the age fourteen limit should apply to the date the juvenile committed the crime being direct filed. *See Allstate Ins. Co. v. Smith*, 902 P.2d 1386 (Colo.1995) (use

of materially different language in statutory subsections indicates that General Assembly did not intend identical results).

Applying the age limit in § 19–2–517(1)(a)(IV) to the time the juvenile is charged by direct filing finds support in *People v. Davenport*, 43 Colo.App. 41, 602 P.2d 871 (1979). There, a division of this court interpreted an earlier version of the direct filing statute, then numbered § 19–1–104(4)(b), which provided:

A child may be *charged* with the commission of a felony only after the hearing as provided in paragraph (a) of this subsection (4), *or* when the child is:

(I) *Alleged* to have committed a crime of violence defined by § 18–1–105, C.R.S. 1973, as a class I felony, and is fourteen years of age or older . . . .

(Emphasis added.)

The defendant in *Davenport* conceded that he was fourteen when the indictment was filed, but argued that the district court lacked jurisdiction because he was ultimately convicted of a lesser offense. The *Davenport* division disagreed, concluding that the words "charged" and "alleged" in the statute show that the General Assembly intended the indictment, and not the subsequent conviction, to determine juvenile court and district court jurisdiction.

Similarly, the current § 19–2–517(1)(a)(IV) sets forth the conditions under which a juvenile may be "charged" in district court, including the condition that the juvenile has "allegedly" committed a certain type of crime. Thus, we conclude this language focuses on the indictment or information, not the crime.

Defendant argues that applying the age limit to the time of the information or indictment, rather than to the commission of the crime, would conflict with *People v. Trujillo*, 983 P.2d 124 (Colo.App.1999). We are not persuaded.

In *Trujillo*, the division interpreted § 19–2–517(1)(a)(III), C.R.S.2005, which provides that a juvenile may be charged by the direct filing of an information in the district court when "[t]he juvenile has, within the two previous years, been adjudicated a juvenile delinquent . . . is sixteen years of age or older, and allegedly has committed a [specified] crime." The defendant argued that the district court lacked jurisdiction because, although he had committed the current offenses within two years of his delinquency adjudication, the People did not file the information within two years of that adjudication.

The *Trujillo* division disagreed, concluding that the two-year period should be measured from the date of the previous adjudication to the date of the current offense, not the later date when the People filed the information based on that offense. The division explained that focusing on the defendant's conduct, rather than on the People's charging decision, furthered the legislative goal of discouraging recidivism by "giving juveniles a concrete period within which to reform their behavior and ensuring that the date of the triggering event for the subsequent offense is within their control." *People v. Trujillo, supra*, 983 P.2d at 126.

Section 19–2–517 must be interpreted consistently with the legislative declaration in the Children's Code, which recognizes the need to "protect, restore, and improve the public safety." Section 19–2–102(1), C.R.S. 2005. The *Trujillo* division's "concrete period" analysis discourages recidivism and thus furthers public safety.

In contrast, adopting defendant's interpretation of § 19–2–517(1)(a)(IV) would not further public safety. Affording the People discretion to direct file on a crime committed before the juvenile turns fourteen increases the consequences of that crime to the juvenile who has previously been subject to district court proceedings, which may deter recidivism. Thus, applying the age limit to the indictment or information rather than to the crime furthers the legislative goal of enhancing public safety.

Nor are we persuaded by defendant's argument that applying the age limit to the indictment or information rather than to the crime conflicts with *People v. Zamora*, 13 P.3d 813 (Colo.App.2000), and *People in Interest of M.C.*, 750 P.2d 69 (Colo.App.1987), *aff'd*, 774 P.2d 857 (Colo.1989).

*People v. Zamora, supra*, involved a seventeen-year-old defendant who claimed the district court lacked jurisdiction because the

People did not include a separate violent crime count when they direct filed. Thus, *Zamora* addressed the type of crime needed to direct file, not the timing of either the filing or the underlying crime.

In *People in Interest of M.C., supra,* the defendant argued that the juvenile court lacked jurisdiction because he had turned eighteen before the dispositional hearing, although he was seventeen when he committed the crime. The division disagreed, concluding that the General Assembly intended eighteen to be the age after which a person's actions would be considered those of an adult. Thus, using the age when the crime was committed, not the age at disposition, was consistent with this intent.

The *M.C.* decision is not contrary to the People's interpretation here of § 19–2–517(1)(a)(IV). Under § 19–2–104(6), C.R.S. 2005, "[t]he juvenile court may retain jurisdiction over a juvenile until . . . the statute of limitations applicable to any offense that may be charged has run, regardless of whether such person has attained the age of eighteen years, and regardless of the age of such person." In contrast, under § 19–2–104(7), C.R.S.2005, the juvenile court does not have jurisdiction over "a person for any offense committed after the person attains the age of eighteen years." Thus, the statute expressly focuses on the age when the offense was committed. As previously noted, § 19–2–517(1)(a)(IV) contains no similar language.

We also reject defendant's assertion that the People's interpretation of § 19–2–517(1)(a)(IV) would allow the prosecution to circumvent § 19–2–518, C.R.S.2005. The latter statute allows a juvenile court on petition to transfer a twelve- or thirteen-year-old, who has committed a delinquent act that constitutes a class 1 or class 2 felony or a crime of violence, to district court if "[a]fter investigation and a hearing, the juvenile court finds it would be contrary to the best interests of the juvenile or of the public to retain jurisdiction." Section 19–2–518(1)(a)(II), C.R.S.2005.

The People's interpretation of § 19–2–517(1)(a)(IV) only allows them to direct file on a juvenile who is at least fourteen years old. Juveniles who are younger when a prosecutor seeks by petition to proceed in district court would still be subject to, and thus in defendant's view protected by, the juvenile court procedures described in § 19–2–518.

Section 19–2–104(1)(b), C.R.S.2005, shows that the General Assembly chose to limit this procedural protection to juveniles below age fourteen. Under this subsection, although a juvenile is subject to transfer under § 19–2–518, after filing charges in juvenile court and before a transfer hearing "the district attorney may file the same or different charges against the juvenile" by direct filing under § 19–2–517. In this event, "the juvenile court shall no longer have jurisdiction over proceedings concerning said charges." Section 19–2–104(1)(b).

The transfer process includes a juvenile who is fourteen years of age and "is a juvenile delinquent by virtue of having committed a delinquent act that constitutes a felony." Section 19–2–518(1)(a)(I)(B), C.R.S.2005. Although the delinquent act could have been committed before the juvenile turned fourteen and a transfer hearing may be pending, once the juvenile reaches that age the prosecution could direct file. The transfer statute no longer includes the restrictive language before the court in *J.D.C. v. Dist. Court,* 910 P.2d 684, 686 (Colo.1996)("According to the plain language of [the former version of the transfer statute], once a juvenile petition is filed in juvenile court, the only proper method for transferring the case to the district court is a transfer hearing before the juvenile court.").

In this regard, defendant's reliance on *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), is misplaced. In *Kent,* the Supreme Court addressed the procedural due process that must be afforded in a juvenile court transfer proceeding similar to a proceeding under § 19–2–518. The opinion does not address procedural due process in direct filing.

We are not persuaded by defendant's argument that the People's interpretation would result in district court proceedings against juveniles who committed crimes when they were under twelve years of age, if a prosecutor waited until the juvenile turned fourteen and then direct filed. Under the Children's Code, the legislature has provided

a mechanism for charging twelve- and thirteen-year-olds in district court, through the transfer statute, § 19–2–518. Hence, the General Assembly did not intend fourteen to be the minimum age at which criminal responsibility as an adult can attach. In contrast, the Children's Code provides no mechanism for prosecuting a juvenile less than twelve years old as an adult in district court.

Further, this result would be prevented if the juvenile proved prosecutorial delay. *See People v. Melanson*, 937 P.2d 826, 831 (Colo. App.1996) (apart from the right to a speedy arrest or indictment, "[a] point may be reached at which the delay in prosecution is so great that considerations of due process and fundamental fairness require that the charges be dismissed").

For these reasons we are also not persuaded by defendant's argument concerning a juvenile who committed a crime while age nine, but became subject to direct filing in district court because the prosecutor waited until the juvenile turned fourteen.

Moreover, we note that the juvenile court has "exclusive original jurisdiction" over "any juvenile ten years of age or older" who has, among other things, violated "(I) Any federal or state law [with exceptions]; (II) Any county or municipal ordinance [with exceptions]; or (III) Any lawful order of the court made under this title." Section 19–2–104(1)(a), C.R.S.2005. While this statute also does not require that the law or ordinance violation have occurred when the juvenile was age ten or older, our interpretation does not reach this far.

■ We decline defendant's invitation to invoke the rule of lenity, which requires courts to resolve ambiguities in a penal code in favor of a defendant's liberty interests. *Frazier v. People*, 90 P.3d 807 (Colo.2004). This rule is a principle of last resort and will not be applied to defeat the intent of the General Assembly. *Frazier v. People, supra.* Because the language in §§ 19–2–102 and 19–2–517(1)(a)(IV) sufficiently informs us of legislative intent, we cannot invoke the rule of lenity.

Additionally, defendant sets forth several public policy arguments concerning potential abuse of prosecutorial discretion in deciding which juveniles against whom to direct file and the societal consequences of prosecuting juveniles as adults. We believe that the General Assembly may anticipate the proper exercise of prosecutorial discretion. *See* W. LaFave & A. Scott, *Criminal Law* § 3.8, at 243 (2d ed.1986). Further, we view such policy determinations as solely within the domain of the General Assembly and not of this court. *See Concerned Parents of Pueblo, Inc. v. Gilmore*, 47 P.3d 311 (Colo.2002); *Town of Telluride v. Lot Thirty–Four Venture, L.L.C.*, 3 P.3d 30 (Colo.2000)(it is not up to the court to make policy or to weigh policy).

Accordingly, we conclude § 19–2–517(1)(a)(IV) does not require a juvenile to have been fourteen years old when the crime charged by direct filing in district court was committed.

## B.

■ Defendant next argues that § 19–2–517(1)(a)(IV) denies him equal protection of the law because offenders thirteen years old or younger are not subject to the jurisdiction of the district court by direct filing. Again, we disagree.

■ To state an equal protection violation, a defendant must establish that he or she received treatment different from that afforded to similarly situated persons. *People v. Oglethorpe*, 87 P.3d 129 (Colo.App. 2003). But here defendant was subject to direct filing in the district court only after he turned fourteen. This fact defeats an equal protection challenge based on defendant's comparing himself to juveniles who have not yet reached that age, and thus are not subject to direct filing under § 19–2–517(1)(a)(IV). *See People v. Smith*, 29 P.3d 347 (Colo.App.2001); *Jaffe v. City & County of Denver*, 15 P.3d 806 (Colo.App.2000).

Instead, we analyze defendant's equal protection argument as related to other similarly situated fourteen-year-olds, all of whom could be subject to direct filing in the exercise of prosecutorial discretion, and who, like defendant, committed certain crimes before having attained age fourteen. *See also* § 19–2–517(1)(a)(I), (II)(A)-(D).

In *People v. Thorpe*, 641 P.2d 935, 940 (Colo.1982), the supreme court said:

> [W]e reject the defendant's argument that he was denied equal protection of the law because the district attorney chose to file a criminal action against him whereas another in his same circumstance could be treated as a juvenile and charged with delinquency. We reiterate that the conscious exercise of selectivity in the enforcement of laws is not in itself a constitutional violation of equal protection of the law, absent a showing that a prosecutor has exercised a policy of selectivity based upon an unjustifiable standard such as "race, religion, or any other arbitrary classification," which was not shown here.

 Prosecutorial discretion is a hallmark of our criminal justice system that flows from the doctrine of separation of powers. *See People in Interest of J.A.L.*, 761 P.2d 1137 (Colo.1988). In order to preserve the required separation of powers, a prosecutor's charging decision may not be controlled or limited by judicial intervention. *People v. Dist. Court*, 632 P.2d 1022 (Colo.1981).

Accordingly, we discern no equal protection violation in the exercise of discretion by prosecutors who select which juveniles, at least age fourteen but who committed crimes while younger, on whom to direct file in district court.

## II.

Having determined that the trial court had jurisdiction under the direct filing statute, we need not address defendant's argument that his plea counsel was ineffective in failing to raise this issue. *See People v. Fulton*, 754 P.2d 398 (Colo.App.1987)(need not address claim of ineffective assistance where no harm resulted).

## III.

Finally, defendant contends the trial court erred by allowing the prosecution to introduce hearsay evidence at the revocation hearing. We discern no reversible error.

A defendant facing revocation of YOS is not entitled to the same procedural protections guaranteed to an accused at trial. *People v. McCoy*, 939 P.2d 537 (Colo.App.1997). Yet because revocation entails potential loss of freedom, minimum due process protections are required. *People v. McCoy, supra.*

As in probation and parole revocation hearings, due process at a YOS revocation hearing requires (1) written notice of the claimed violations; (2) disclosure to the defendant of the evidence against him or her; (3) a fair opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adversarial witnesses, unless there is good cause to deny such a right; (5) a neutral and detached hearing officer or judge; and (6) a written statement by the fact finder as to the evidence relied on and reasons for the revocation. *People v. McCoy, supra.*

In a revocation hearing, a trial court is not bound by the strict rules of evidence, and all probative evidence is admissible so long as the defendant has the opportunity to rebut any hearsay. *Byrd v. People*, 58 P.3d 50 (Colo.2002); *People v. Kelly*, 919 P.2d 866 (Colo.App.1996)(General Assembly expressed its intent to have all probative evidence considered at the revocation hearing, even if that evidence would be excluded in a criminal trial); *cf.* § 16–11–206(3), C.R.S.2005 (any evidence having probative value shall be received if the defendant is accorded a fair opportunity to rebut hearsay evidence).

Where a defendant does not make a contemporaneous objection when hearsay is admitted, the plain error standard of review applies. *People v. Bowers*, 801 P.2d 511 (Colo.1990). Such an error must be "obvious, substantial, and grave." *Moore v. People*, 925 P.2d 264, 268 (Colo.1996). Under this standard, reversal is limited to those circumstances in which "an appellate court, after reviewing the entire record, can say with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Wilson v. People*, 743 P.2d 415, 420 (Colo.1987).

Here, the People neither called any witnesses nor presented any potential witnesses for cross-examination, but instead introduced into evidence a "revocation packet" that contained various progress reports and assess-

ments relating to defendant. When it was introduced, the following colloquy took place:

> Defendant: It's my understanding ... that the People do not intend to present any evidence via witnesses at the hearing today and they're relying solely on [the revocation packet].
>
> Court: Is that right, [People]?
>
> People: That's clear.
>
> . . . .
>
> Court: All right. And no objection to admitting [the revocation packet], considering that here, [defendant], just for the record?
>
> Defendant: No objection, Judge.

Nevertheless, during summation defendant argued that the revocation packet was hearsay.

Defendant was accorded a fair opportunity to rebut the revocation packet during his own testimony. Instead, defendant testified that he had signed a contract with YOS, which "spelled out the terms and conditions [he was] expected to abide by," and then admitted that he had violated several provisions of this contract.

The trial court found: "The evidence at the hearing established that Defendant was made aware of several different types of misconduct which could cause his removal from YOS, and that he subsequently was involved in a variety of these types of misconduct." Although as the trial court acknowledged, "evidence as to all of the misconduct was meticulously detailed in Defendant's revocation packet," defendant's own testimony adequately supported the court's finding. Hence, the revocation decision does not depend on this packet.

Nevertheless, defendant argues that, even if a probation violation can be established by hearsay evidence, the People must still present the offering witness for cross-examination. *See People v. Moses,* 64 P.3d 904, 908 (Colo.App.2002)("[A] probation violation may be established by hearsay testimony if the offering witness is subject to cross-examination."). According to defendant, he was wrongly forced to choose between holding the People to their burden of making the offering witness available for cross-examination and exercising his right not to testify. We are not persuaded that this "forced the

choice," which defendant raises for the first time on appeal.

Defendant expressly disavowed any objection to the revocation packet, after having been told that the People had no witnesses. Under these circumstances the error, if any, in admitting the revocation packet without requiring the People to present an offering witness for cross-examination is not so obvious as to call for inquiry into the reliability of the judgment. *See People v. Petschow,* 119 P.3d 495 (Colo.App.2004).

Defendant's assertion that *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), applies to revocation proceedings has already been rejected by a division of this court. *See People v. Turley,* 109 P.3d 1025 (Colo.App.2004)(the right of confrontation in revocation proceedings flows entirely from the Due Process Clause of the Fourteenth Amendment, rather than the Confrontation Clause of the Sixth Amendment). We decline to depart from this holding.

Accordingly, we discern no plain error.

The orders are affirmed.

MARQUEZ, J., concurs.

PICCONE, J., dissents.

Judge PICCONE dissenting.

I disagree with the majority's conclusion that pursuant to § 19–2–517(1)(a)(IV), C.R.S. 2005, so long as the juvenile is fourteen years old at the time he or she is charged in district court, the juvenile's age at the time the offense was committed does not matter. In my view, the juvenile must be at least fourteen years old at the time the offense is committed before the district attorney has the discretion to file the charge in district court. The majority's interpretation is contrary to the objective sought to be achieved by the legislation and leads to an unreasonable result.

The majority recognizes the statute is susceptible to more than one interpretation. Our goal in construing a statute is to ascertain and give effect to the intent of the General Assembly. We must presume that the General Assembly intends a just and

reasonable result. We will not follow a statutory construction that either defeats legislative intent or leads to an unreasonable result. *People v. Trujillo,* 983 P.2d 124 (Colo.App. 1999).

To determine legislative intent, we first look to the language of the statute, giving the words and phrases their plain and ordinary meaning. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986); *Trujillo, supra.* When the statutory language is clear and unambiguous, it must be interpreted as written, without resort to interpretive rules and statutory construction. *People v. Zapotocky,* 869 P.2d 1234 (Colo.1994); *see also Trujillo, supra.* "If, however, the statutory language lends itself to alternative constructions and its intended scope is unclear, a court may apply other rules of statutory construction to determine which alternative construction is in accordance with the objective sought to be achieved by the legislation." *Trujillo, supra,* 983 P.2d at 126; *see also People v. Terry,* 791 P.2d 374 (Colo.1990).

A court may also consider the consequences of a particular construction and the legislative policy declaration at the outset of the legislation to determine legislative intent. *Trujillo, supra; see* § 2–4–203(1)(d)–(e), C.R.S.2005.

The Children's Code was designed to benefit youthful offenders and should not be construed to diminish their rights. *C.C.C. v. Dist. Court,* 188 Colo. 437, 535 P.2d 1117 (1975).

> [T]he intent of [the Code] is to protect, restore, and improve the public safety by creating a system of juvenile justice that will appropriately sanction juveniles who violate the law .... The general assembly further finds that, while holding paramount the public safety, the juvenile justice system shall take into consideration the best interests of the juvenile ... in providing appropriate treatment to reduce the rate of recidivism in the juvenile justice system and to assist the juvenile in becoming a productive member of society.

Section 19–2–102(1), C.R.S.2005.

> One of the fundamental differences between the juvenile system of justice and an adult criminal prosecution "is the overriding goal of the Children's Code to provide guidance and rehabilitation of an adjudicated delinquent child in a manner consistent with the best interest of the child and the protection of society rather than fixing criminal responsibility, guilt, and punishment."

*People v. J.J.H.,* 17 P.3d 159, 163 (Colo.2001) (quoting *S.G.W. v. People,* 752 P.2d 86, 91 (Colo.1988)); *see People in Interest of M.C.,* 750 P.2d 69, 70 (Colo.App.1987)("The Children's Code's sole emphasis is on rehabilitating children, assisting them in becoming responsible and productive members of society, and preventing them, while at an impressionable and vulnerable age, from becoming criminals."), *aff'd,* 774 P.2d 857 (Colo.1989).

As pertinent here, § 19–2–517(1)(a), C.R.S. 2005, states:

> A juvenile may be charged by the direct filing of an information in the district court or by indictment only when: ...
>
> (IV) The juvenile is fourteen years of age or older, has allegedly committed a delinquent act that constitutes a felony, and has previously been subject to proceedings in district court as a result of a direct filing pursuant to this section or a transfer pursuant to section 19–2–518 ....

Thus, § 19–2–517(1)(a)(IV) provides that if certain conditions are met, a juvenile can only be charged in district court if the juvenile is fourteen years old or older and has committed a delinquent act that constitutes a felony. The statute's two most obvious and basic limitations are the offender's age—fourteen—and the nature of the offense—a felony.

The majority's interpretation focuses on the word "charged" and concludes that the absence of language requiring that the juvenile be fourteen when the offense was committed gives the district attorney discretion to wait to file the charge until the juvenile turns fourteen. Section 19–2–517(1)(a)(IV), however, focuses on the conduct of the juvenile and requires that the juvenile be fourteen years old and have committed a delinquent act. The statute by its very terms requires that the offense be committed when the juvenile is fourteen years of age or older, *and* has allegedly committed a delinquent act that constitutes a felony, *and* has previously

been subject to proceedings in district court. The statute does not suggest that the delinquent act can be committed before the juvenile turns fourteen.

Colorado case law and the Children's Code support this interpretation.

First, in *People v. Trujillo, supra,* the defendant argued that pursuant to § 19–2–517(1)(a)(III), C.R.S.2005, the district court did not have subject matter jurisdiction because the People did not file the information within two years of his previous adjudication. The division held that the required two-year period was to be measured from the date of the previous adjudication to the date of the juvenile's current offenses. The division stated:

> Focusing on the defendant's conduct is consistent with the legislative purpose of encouraging juveniles to reform their behavior and to become productive members of society. Defendant's interpretation of the statute focuses on the People's conduct, rather than on the juvenile's conduct, and would result in there being different consequences for a juvenile's conduct depending upon the date the People file the information.

*Trujillo, supra,* 983 P.2d at 126.

Thus, the focus must be on the conduct of the juvenile, not on the date of the indictment or information. Any other interpretation would authorize different consequences for a juvenile's conduct depending on the date the prosecution files the information. For example, if the date of the indictment or information is controlling, a child who commits an offense at age eleven could be charged as an adult by direct filing in district court merely because the information or indictment is filed when he or she turns fourteen. Under the majority's interpretation, the delinquent act turns into an alleged felony merely because of the lapse of time. Likewise, the district court acquires jurisdiction merely because of the lapse of time.

Second, the juvenile court has exclusive, original jurisdiction over juveniles from ten years to eighteen years of age who have violated state law. Section 19–2–104(1)(a), C.R.S.2005; *see* §§ 19–1–103(18), (68) & 19–2–103(10), C.R.S.2005. The juvenile court's exclusive jurisdiction yields to the jurisdiction of the district court only in certain limited circumstances. *See* §§ 19–1–104, 19–2–517, 19–2–518, C.R.S.2005.

In *People in Interest of M.C., supra,* the defendant asserted that the juvenile court did not have jurisdiction because although he was seventeen years old at the time of the offense, he turned eighteen before the dispositional hearing. The division held that "[t]he age at which the acts were committed is the determinative factor [for jurisdiction], not the age at which disposition was imposed." *M.C., supra,* 750 P.2d at 70.

Further, § 19–2–104(6), C.R.S.2005, states that the juvenile court may retain jurisdiction until the statute of limitations applicable to any offense that may be charged has run, regardless of whether the juvenile has attained the age of eighteen years and regardless of the age of such person. In conferring jurisdiction on the juvenile court, the statute expressly focuses on the age at the time the offense was committed. Thus, the date the offense is committed is determinative to invoke the jurisdiction of the juvenile court.

Third, the purpose of the Code is defeated if prosecutors charged with the execution of the law may defer action until the child turns fourteen. The majority's interpretation would authorize different consequences for a juvenile's conduct, depending upon the date the prosecution files the information.

In enacting the direct filing statute, the General Assembly authorized prosecutors to treat juvenile offenders meeting certain criteria as adults and thereby subject them to adult penalties. It strictly limited the circumstances in which a juvenile may be subject to the general jurisdiction of the district court. The most basic limitation set forth by the legislature is the age of the offender. A juvenile who commits an offense before his or her fourteenth birthday is only subject to prosecution in the district court in extremely limited circumstances as set forth in § 19–2–518, the "transfer" statute, which states in pertinent part:

> (1)(a) The juvenile court may enter an order certifying a juvenile to be held for criminal proceedings in the district court if:

(I) A petition filed in juvenile court alleges the juvenile is:

(A) Twelve or thirteen years of age and is a juvenile delinquent by virtue of having committed a delinquent act that constitutes a class 1 or class 2 felony or a crime of violence, as defined in section 18–1.3–406, C.R.S.; or

(B) Fourteen years of age or older and is a juvenile delinquent by virtue of having committed a delinquent act that constitutes a felony; and

(II) After investigation and a hearing, the juvenile court finds it would be contrary to the best interests of the juvenile or of the public to retain jurisdiction.

Thus, a juvenile who commits an offense at thirteen years of age is only subject to prosecution in district court if he or she is alleged to have committed a delinquent act that constitutes a class 1 or class 2 felony, and only if, after an investigation and hearing, the juvenile court determines it is contrary to the best interests of the juvenile or of the public to retain jurisdiction.

This statute must be read in conjunction with §§ 19–2–104 and 19–2–517, resulting in a coherent allocation of jurisdiction based on the age of the child at the time of the offense:

- Children who commit offenses before they turn ten years old are presumed incapable of a delinquent act and are immune from proceedings in either the juvenile court or the district court.

- Children who commit offenses when they are over the age of ten but younger than the age of twelve are subject to the exclusive jurisdiction of the juvenile court.

- Children who commit offenses when they are over the age of twelve but younger than the age of fourteen are subject to the exclusive jurisdiction of the juvenile court except when they commit a delinquent act that constitutes a class 1 or class 2 felony or a crime of violence. In such limited cases, the juvenile court may certify the juvenile for proceedings in the district court but only after a full investigation and hearing.

- Children over the age of fourteen who commit felony offenses may be subject to the jurisdiction of the district court through judicial transfer.

- Children over the age of fourteen who commit felony offenses also may be subject to the jurisdiction of the district court through prosecutorial direct filing, but only when they meet all the statutory prerequisites.

Thus, the offender's age at the time of the offense is decisive, not the age when proceedings are commenced.

Accordingly, in my view, § 19–2–517 utilizes age and offense criteria to limit prosecutorial discretion to direct file in the district court.

Finally, an interpretation that focuses on the age of the child at the time of the offense also is supported by the legislative declaration in the Children's Code that the juvenile justice system shall take into consideration the best interests of the child and the state and the interest in reducing recidivism and assisting juveniles in becoming productive members of society. Although the majority's opinion focuses on the goal of public safety, it ignores the declaration that the juvenile justice system shall consider the best interests of the child and the interest in reducing recidivism and assisting juveniles in becoming productive members of society.