761 P.2d 1137 (1988)
The PEOPLE of the State of Colorado, Petitioner-Appellant, in the Interest of J.A.L., a Child,
And Concerning the District Court Within and for the Twenty-Second Judicial District of the State of Colorado, and the Honorable Grace S. Merlo, Judge Thereof, and E.L., Respondents-Appellees.
No. 87SA248.
Supreme Court of Colorado, En Banc.
September 12, 1988.
*1138 Dean J. Johnson, Dist. Atty., Karen Winchester Davis, Deputy Dist. Atty., Cortez, for petitioner-appellant.
David F. Vela, Colorado State Public Defender, T. Curtis Bobbitt, Deputy State Public Defender, Durango, for J.A.L.
VOLLACK, Justice.
The People appeal from the district court's dismissal of four delinquency petitions filed against the minor respondent-appellee J.A.L. in the Twenty-Second Judicial District. In this companion case to People in the Interest of M.N., 761 P.2d 1124 (Colo.1988), we apply the analysis of M.N., reverse the district court's dismissal order, and remand for refiling of the petitions.

I.
The testimony at the motions hearing in the district court establish the following sequence of events. Montezuma County Deputy Sheriff Louis Dabdoub was working as an undercover drug enforcement officer at Montezuma-Cortez High School. At the high school, Dabdoub met a student and expressed a desire to buy marijuana. This student introduced Dabdoub to J.A.L. After some discussion, J.A.L. told Dabdoub that if Dabdoub paid thirty dollars, J.A.L. would drive to another location and return with marijuana. Dabdoub paid, but when J.A.L. returned he said that he was unable to obtain marijuana at that time. J.A.L. and Dabdoub traveled together to another address where J.A.L. entered a residence, had a brief conversation with an unknown party at the front door, and returned to the car without marijuana.
On October 14, Dabdoub was driving down Main Street when he was "flagged down" by J.A.L., who asked Dabdoub if he knew anyone interested in purchasing marijuana. Dabdoub responded that he was interested and arranged to delay the transaction for ten minutes so he could equip himself with an audio intelligence device. Dabdoub returned to the car where J.A.L. was waiting and agreed to buy a bag of marijuana from J.A.L., even though the price was now forty-five dollars. Dabdoub gave J.A.L. fifty dollars and in exchange, J.A.L. gave him a bag containing a substance later identified as marijuana and five dollars in change. They discussed the possibility of a larger transaction involving "pounds of marijuana," and arranged to meet two days later.
At their next meeting on the morning of October 16, Dabdoub met J.A.L. behind a liquor store. J.A.L. explained that the large quantity of marijuana they hoped to purchase would not be available until after 1:30 p.m.; they decided to go to another location and buy a small amount of marijuana for personal consumption while they waited. They went to a trailer park where Dabdoub bought a bag of marijuana from J.A.L.'s friend M.G. After this purchase, Dabdoub told J.A.L. that he would also be interested in buying cocaine if J.A.L. knew where cocaine might be available. Dabdoub and J.A.L. drove to another residence to purchase cocaine, where J.A.L. was told that his "supplier was out ... but he would possibly have some at a later date."
In the meantime, J.A.L. and Dabdoub learned that the large quantity of marijuana they were waiting to purchase would not be available at 1:30 p.m. Finally, they traveled to one more residence where Dabdoub bought another bag of marijuana. Dabdoub and J.A.L. were unable on this date to make the large marijuana purchase as planned.
The next day, J.A.L. found Dabdoub and told him that his "cocaine problems were solved" because J.A.L.'s "dealer had got a supply and he knew where we could get some." The resident of the first house to *1139 which they traveled did not have any cocaine, so they went to another house. This time, Dabdoub went inside the house with J.A.L. They remained at the house for three hours, and the residents eventually sold cocaine to Dabdoub. Based on these events, juvenile petitions in delinquency were filed against J.A.L.
J.A.L.'s counsel filed a motion to dismiss the petitions. At the hearing on the motion, the judge heard testimony and ordered the four petitions dismissed. The district attorney appeals the dismissal order.

II.

A.
At the motions hearing, the judge ruled: [T]he Court will dismiss all of these charges, and for the same reasons stated in the [M.N.] case, that this law [§ 19-3-119(3)] is intended to protect children and not adults and if the legislature had intended to exempt police officers, it would have been very easy in this case to say "except for police officers investigating offenses involving the juveniles."
(Emphasis added). In both the written and the verbal order in this case, the district court dismissed the petitions based on its ruling that law enforcement officer Dabdoub had violated section 19-3-119(3) (aiding and abetting a minor).[1] The court also held, however, that dismissal was necessary "for the same reasons stated" in M.N. The legal bases for the ruling in M.N. were that (1) "outrageous governmental conduct" had deprived M.N. of his right to due process of law, and (2) the sheriff's deputy had violated a criminal statute by aiding and abetting a minor. The district court expressly relied on its earlier ruling in M.N. when it ordered dismissal of the petitions filed against J.A.L., but did not make reference to "outrageous governmental conduct" in its order.
For the reasons discussed in our opinion in People in Interest of M.N., we conclude that the trial court abused its discretion in ordering dismissal of the delinquency petitions on the grounds of outrageous governmental conduct.[2]

B.
As we pointed out in M.N., a judge does not have the power to charge an individual with violation of a criminal statute such as section 19-3-119(3). 761 P.2d at 1131; Miller v. People, 102 Colo. 259, 78 P.2d 624 (1938). "The prohibition against judicial intervention in or control of the exercise of prosecutorial discretion flows from the doctrine of separation of powers." People v. Thorpe, 641 P.2d 935, 938 (Colo. 1982). The prosecutor, not the court, is charged with the duty to prosecute individuals for violations of criminal laws. People v. District Court, 632 P.2d 1022, 1024 (Colo.1981). A prosecutor has broad discretion "to determine who shall be prosecuted and what crimes shall be charged." Id. In order to preserve the required separation of powers, decisions of this nature "may not be controlled or limited by judicial intervention." Id. (footnote omitted); Colo. Const. art. III.
In the proceedings at bar, delinquency petitions were filed against J.A.L.
*1140 The undercover law enforcement officer who testified at the motions hearing had not been charged by the district attorney with violation of section 19-3-119(3). For this reason, the trial court abused its discretion to the extent that it ordered the petitions dismissed on the basis that Dabdoub's conduct constituted a criminal offense under section 19-3-119(3).
Based on our holding in M.N., we must also conclude that the record does not establish outrageous governmental conduct.[3] The conduct which gave rise to the petitions against J.A.L. was not so outrageous as to deprive him of his due process rights.[4] Because there was no due process violation, there was no basis for the trial court's order dismissing the petitions. We reverse the dismissal order and remand for reinstatement of the four petitions in delinquency against J.A.L.
QUINN, C.J., specially concurs.
LOHR, J., joins in the concurrence.
QUINN, Chief Justice, specially concurring:
I concur in the result reached by the majority and write separately to state why I believe that the district court erred in dismissing the delinquency petitions filed against J.A.L.
The facts of this case are significantly different from those in People in the Interest of M.N., 761 P.2d 1124 (Colo.1988), in which I dissented and discussed various factors to be considered when determining whether a government agent's investigative activity constituted outrageous conduct in violation of the Due Process Clause of the Colorado Constitution. In the instant case, Deputy Sheriff Dabdoub did not initiate contact with J.A.L., but met him through an introduction by another student, who told Dabdoub that J.A.L. would be able to arrange a marijuana sale. Furthermore, Dabdoub did not reestablish contact with J.A.L. after the first attempt to buy marijuana was unsuccessful; rather, J.A.L. sought out Dabdoub on his own to arrange another transaction. Moreover, unlike the situation in M.N., Dabdoub never offered any of the marijuana to J.A.L., and J.A.L. never expressed an unwillingness to participate in any of the illegal activities. Thus, J.A.L.'s continued involvement with Dabdoub was not the sole result of Dabdoub's encouragement and persistence.
Under these circumstances, I believe that the district court erred in dismissing the delinquency petitions against J.A.L. on the ground that Dabdoub's conduct was outrageous in violation of due process of law.
I am authorized to say that Justice LOHR joins me in this concurrence.
NOTES
[1] As you well know because of the [M.N.] case, that it's the belief of the Court that under CRS 19-3-119(3) that Officer Dabdoub, in dealing with children, did violate the law.

You have indicated that [defense counsel] has been arguing entrapment. I think what he has been arguing is that because Officer Dabdoub violated the law, that his evidence should be suppressed, any testimony by Officer Dabdoub, and I believe I made the statement in the [M.N.] case, if the officer can violate the law and still be allowed to give testimony in the courtroom as far as the juvenile is concerned, then there's no teeth in the law. The law is intended to protect children, as was stated in the [M.N.] case.
....
I don't think there's any question that Dabdoub was very active in urging these juveniles, including this one, to violate the law. He aided them, and in the terms of the statute, any adult who induces, aids or encourages the child to violate any federal or state law, ... commits a class 4 felony, and shall be punished....
[2] Entrapment, an issue raised by the parties at the hearing, was also not appropriate in this context, for the reasons discussed in M.N. 761 P.2d at 1130 n. 2.
[3] Whether the deputy's conduct constituted entrapment is a factual question for the trier of fact, hence not an issue at this stage of the proceedings.
[4] See, e.g., United States v. Hampton, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Cantwell, 806 F.2d 1463 (10th Cir. 1986); United States v. Salazar, 720 F.2d 1482 (10th Cir.1983); United States v. Szycher, 585 F.2d 443 (10th Cir.1978).