**The PEOPLE of the State of Colorado, Complainant,**

v.

**Lari Jean TROGANI, Respondent.**

**No. 08PDJ007.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Nov. 18, 2008.

On July 22, 23, and 24, 2008, a Hearing Board composed of BARBARA A. MILLER, a citizen board member, F. STEPHEN COLLINS, a member of the Bar, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge, held a hearing pursuant to C.R.C.P. 251.18. Margret B. Funk appeared on behalf of the Office of Attorney Regulation Counsel ("the People") and Michael D. Gross appeared on behalf of Lari Jean Trogani ("Respondent"). The Hearing Board now issues the following "Opinion and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19."

## I. *ISSUE*

Suspension is generally appropriate when a lawyer *knowingly* violates a court order or *knows* that material information is improperly being withheld from a court and takes no remedial action. Respondent knowingly violated an order from a county court judge when she tendered a global plea agreement to a district court judge. She then withheld information from the district court judge after he asked about the county court judge's position on it. What is the appropriate sanction?

## II. *SUMMARY*

After carefully reviewing the evidence and considering the arguments of counsel, the Hearing Board finds clear and convincing evidence that Respondent violated the following Colorado Rules of Professional Conduct:

- Colo. RPC 3.3(a)(1) (a lawyer shall not *knowingly* make a false statement of material fact to a tribunal); [1]
- Colo. RPC 8.4(c) (a lawyer shall not engage in conduct involving misrepresentation);

---

1. *See* Colo. RPC 3.3, *comment* [2] ("There are circumstances where failure to make a disclosure

- Colo. RPC 3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal); and
- Colo. RPC 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

The Hearing Board finds that most of the material facts in this case are undisputed. The Hearing Board reviewed transcripts of court proceedings, as well as a detailed stipulation, which provided a clear picture of Respondent's actions and statements in open court. From these material facts, the Hearing Board finds that Respondent acted with a conscious awareness of her conduct, but without the intent to deceive the district court judge. The evidence demonstrates that Respondent believed, albeit mistakenly, that a global plea agreement would serve the best interests of the judicial system. She also believed that the global plea agreement effectuated a disposition that was in the best interests of justice, her client, and the district attorney.

While it acknowledges Respondent's lack of specific intent to violate the Colorado Rules of Professional Conduct, the Hearing Board nevertheless concludes that her conduct constituted a serious violation of these rules warranting a suspension. To find otherwise would undermine respect for the courts and the important role they serve in the supervision and administration of our justice system.

*SANCTION IMPOSED:* **ATTORNEY SUSPENDED FOR ONE YEAR AND ONE DAY, ALL BUT NINETY (90) DAYS STAYED UPON THE SUCCESSFUL COMPLETION OF A TWO–YEAR PERIOD OF PROBATION WITH CONDITIONS.**

## III. *PROCEDURAL HISTORY*

On January 24, 2008, the People filed a Complaint and alleged violations of Colo. RPC 3.3(a)(1), 3.4(c), 8.4(c), and 8.4(d), Claims I, II, III, IV respectively. Respondent filed an Answer on February 19, 2008. On March 4, 2008, the Court held an At–Issue Conference and scheduled the matter for a three-day hearing to commence on July 22, 2008.

## IV. *FINDINGS OF MATERIAL FACT*

The following material facts arise from the pleadings, stipulated facts and exhibits, and testimony presented in these proceedings.[2]

### Background

Respondent has taken and subscribed the Oath of Admission, was admitted to the Bar of the Colorado Supreme Court on October 22, 1990, and is registered upon the official records, Attorney Registration No. 20008. She is therefore subject to the jurisdiction of the Hearing Board in these disciplinary proceedings. Respondent's registered address is 1824 West Colorado Ave., Colorado Springs, Colorado 80904.[3]

Respondent began her legal career as a paralegal with a well-respected law firm in Denver after she received her undergraduate degree from the University of Colorado. With the encouragement of members from this firm, Respondent attended and graduated from the University of Wyoming School of Law and later passed the Colorado Bar Examination. She initially worked for the Colorado Public Defenders Office in Denver and thereafter practiced with an esteemed trial attorney in Colorado Springs.

Respondent now practices as a sole practitioner specializing in criminal law. She serves as alternate defense counsel ("ADC") in Division 5 of the El Paso County District Court. In her capacity as an ADC, she represents indigent defendants with whom

---

is the equivalent of an affirmative misrepresentation."). The Hearing Board concluded that Respondent violated this rule with her affirmative statements *and* her failure to make a disclosure.

2. *See* Stipulated Exhibits 1–23 and Respondent's Exhibits A and B. The Presiding Disciplinary Judge also admitted Respondent's Exhibit C over the People's objection.

3. *See* C.R.C.P. 251.1; and "Stipulation of Facts" at ¶ 1.

the public defender maintains a conflict. At any given time, Respondent represents up to 125 clients whom she defends on felonies in the district court.

The Complaint against Respondent arose from her representation of a client who had been charged in El Paso County District Court with felony charges and who simultaneously faced a probation revocation hearing on misdemeanor domestic violence charges in El Paso County Court.

### Stipulated Facts [4]

In 2006 and 2007, Respondent represented Leonard Quintana in multiple criminal proceedings pending against him in El Paso County District Court and El Paso County Court. In late 2003, Mr. Quintana had been involved in eleven separate misdemeanor domestic violence cases pending before El Paso County Court Judge Christopher E. Acker ("Judge Acker") in Division B. Mr. Quintana was then charged with felony domestic violence. His felony case was assigned to El Paso County District Court Judge Edward S. Colt ("Judge Colt") in Division 1. At the time Mr. Quintana's felony case was assigned to Judge Colt, his eleven Division B cases remained unresolved in Division B.

On August 30, 2004, Judge Acker approved a plea disposition disposing of all eleven of the misdemeanor domestic violence matters. Pursuant to the terms of the plea agreement, Mr. Quintana pled guilty to four of the pending misdemeanor domestic violence cases, and the remaining seven misdemeanor domestic violence cases were dismissed. As part of the agreement, Mr. Quintana was placed on supervised probation.

Mr. Quintana did not comply with the terms of probation and the court scheduled a hearing to determine whether his probation should be revoked.[5] Mr. Quintana did not appear at his probation revocation hearing and also failed to appear on his felony domestic violence matters in Division 1. Warrants were then issued for the arrest of Mr. Quintana. Sometime in or around early September 2006, Mr. Quintana was arrested.

During Mr. Quintana's September 5, 2006 court appearance with Judge Acker in Division B, Respondent informed Judge Acker that her client had not yet reached a disposition in the felony case still pending with Judge Colt in Division 1. At Respondent's request, the pending probation revocation matters with Judge Acker were set over to trail Mr. Quintana's felony case. The next probation revocation hearing date was scheduled for November 14, 2006.

On November 14, 2006, Respondent appeared with Mr. Quintana for the scheduled probation revocation hearing with Judge Acker. Respondent informed Judge Acker that "[p]art of the disposition upstairs includes these cases." Judge Acker then stated:

No, they won't. These cases are domestic violence cases and they are not to be handled up there; they will not be handled up there. We can trail it in order to sentence in accordance with it, but domestic violence cases on probation in the division stay in the division.

Respondent replied "I understand that, Judge, and that's what the court told us last time...." Judge Acker further stated, "Let's be clear, then, so there's no confusion. The disposition will not be handled up there." Judge Acker then reset Mr. Quintana's misdemeanor domestic violence probation revocation cases to trail the expected disposition of his felony charged in Division 1.

December 12, 2006 was the date of the next revocation hearing set in Division B. Respondent again informed Judge Acker that the Division 1 felony matter had not yet been resolved, although an agreement for disposition of the felony matter had been reached. The deputy district attorney for Division B then requested that the probation revocation matters pending with Judge Acker trail the felony case once again.

On the record, Judge Acker asked Respondent about the terms of the anticipated disposition of the felony case in Division 1. Respondent informed Judge Acker that each

---

4. *See* "Stipulation of Facts" at ¶ 2–21.

5. This sentence is not a part of the "Stipulation of Facts" but is a finding of the Hearing Board.

of the misdemeanor domestic violence cases pending with him in Division B was to be revoked and the sentences in the cases would run concurrent with the sentence in the Division 1 felony case.[6] Judge Acker reminded Respondent that his cases, the Division B cases, would not be part of the disposition in the felony case, that her client, Mr. Quintana, would be receiving consecutive jail time in the Division B cases, and that he had made these points clear on November 14, 2006. Judge Acker then again reset the misdemeanor domestic violence probation revocation matters for January 19, 2007.

On January 16, 2007, Respondent and Mr. Quintana appeared before Judge Colt in Division 1 on the felony case. Respondent and the district attorney covering the docket for the regular deputy district attorney who had been working with Respondent, proposed a plea disposition to Judge Colt that called for, among other things, all four pending misdemeanor probation revocation matters pending with Judge Acker in Division B be terminated unsuccessfully. Respondent then requested immediate sentencing if Judge Colt accepted the plea.

Before accepting the plea, Judge Colt informed Respondent that he believed the misdemeanor cases included in the proposed disposition had been returned to Judge Acker for disposition. Respondent replied that Judge Acker had indicated he would not send those cases back to Division 1. However, Respondent then stated, "If we, in fact, came to a resolution on them [the misdemeanor cases], just to inform him [Judge Acker], but he wouldn't let them come upstairs. So they've never actually physically come up here, but he's [Judge Acker] indicated if we resolve it, just to inform his clerk and he'll vacate the date."

After further discussing the proposal with Respondent and the district attorney who actually co-authored the proposed disposition, Judge Colt delayed ruling on the proposed plea agreement. Instead, Judge Colt postponed the proceedings so that he could directly speak with Judge Acker on the mat-

ter. On that same day, January 16, 2007, Judge Colt contacted Judge Acker concerning the proposed disposition in the felony matter. The judges decided that Judge Acker would proceed with the probation revocation hearing on January 19, 2007 as scheduled, prior to the felony disposition in Division 1.

On January 19, 2007, Respondent and Mr. Quintana appeared before Judge Acker in Division B for the scheduled probation revocation hearings concerning the misdemeanor domestic violence matters. On that date, Judge Acker required Respondent to elect to go forward with the probation revocation hearings immediately, or to enter admissions to the allegations in the probation officer's complaint and report in the four misdemeanor cases. After discussing the matter with her client, Respondent entered admissions on behalf of Mr. Quintana. Judge Acker then revoked probation on all four of the misdemeanor domestic violence cases and sentenced Mr. Quintana in the Division B cases.

Contrary to Respondent's representations to Judge Colt referenced above, Judge Acker never advised Respondent that if the cases were resolved by Judge Colt, someone just needed to "inform his clerk" so the date could be vacated.

On November 14, 2006 and December 12, 2006, Judge Acker ordered that Mr. Quintana's misdemeanor probation revocation matter was not to be transferred to Judge Colt for resolution. Judge Acker also specifically ordered Respondent not to attempt to include those matters in any plea resolving Mr. Quintana's pending felony matter pending in Division 1. Respondent was present at the time these orders were entered and therefore knew of such court orders.

The parties therefore agree that on January 16, 2007, when Respondent appeared before Judge Colt, Respondent knowingly disobeyed Judge Acker's orders and requested that Judge Colt assume jurisdiction over Mr. Quintana's pending probation revocation matters by entering a plea resolving that pend-

---

6. At this point the district attorney was offering one class four felony leaving it open for the district court to sentence Quintana to either four years in the Department of Corrections or eight years in the Community Corrections program.

ing probation revocation matter with his pending felony matter.

### Testimony of Respondent

Respondent testified that she did not intend to violate Judge Ackers order or deceive Judge Colt when the latter asked if Judge Acker agreed with including the probation revocation matters in the global plea agreement she and the district attorney presented to him. Instead, Respondent stated that the following circumstances prompted her actions in this case:

- The felony case heavily relied upon the testimony of Mr. Quintana's ex-wife who, the weekend before trial, informed the deputy district attorney that she would not testify at the trial. This turn of events substantially changed the plea bargaining positions of Respondent and the deputy district attorney with regard to the felony case, and as a result, the probation revocation matters. Respondent and the deputy district attorney therefore believed that including the dismissal of the probation revocation matters in a global plea agreement would be appropriate in light of the changed circumstances to which Judge Acker was unaware. This global plea agreement would provide the district attorney the benefit of a felony conviction against Mr. Quintana, while it would provide Mr. Quintana the benefit of avoiding jail time.

- During plea negotiations, Respondent told the district attorney that Judge Acker opposed the transfer of the probation revocation matters to district court. Respondent claimed that the proposed disposition of the probation revocation matters was not her deal, but rather the district attorneys. Respondent maintained that she possessed no power to make the county court cases "go away," but instead could only accept or reject an offer from the district attorney. Respondent also believed, contrary to the district attorneys position, that it was the district attorneys obligation to transfer the probation revocation matters to district court.

- Respondent believed that if Judge Acker had known of the changed circumstances, he should not have objected to the resolution of the probation revocation matters in the global plea agreement. At the same time, Respondent acknowledged that she did not attempt to advise Judge Acker of this proposed disposition before tendering the global plea agreement to Judge Colt. Respondent testified that she and the district attorney reached the global plea agreement the weekend before trial, and therefore she did not have time to advise Judge Acker in advance of tendering it to Judge Colt.

- Immediately before the probation revocation hearing on January 19, 2007, Respondent tried to explain to Judge Acker why she had attempted to dispose of the probation revocation matters as a part of a global disposition in district court. Respondent waited outside his chambers that morning, but Judge Acker refused to meet with her before the probation revocation hearing. Respondent believes that Judge Acker should have considered the change in circumstances before he objected to the inclusion of the probation revocation matters in the global plea agreement.

- Respondent does not remember telling Judge Colt, "[i]f we, in fact, came to a resolution on them [the misdemeanor cases], just to inform him [Judge Acker], but he wouldn't let them come upstairs." However, she acknowledged that this statement is in the transcript of the proceeding and therefore assumed the statement is hers. Respondent's only explanation for making this erroneous statement is that she must have been confusing Mr. Quintana's case with another case involving similar circumstances pending in county court at or near the same time, because this type of global plea agreement was, and is, common in some El Paso County Courts and El Paso County District Courts.[7]

7. A clerk for an El Paso County Court judge testified that her judge, like others in the county court, encourages resolving county court matters in district court as part of a global disposition.

- At the time Respondent attempted to offer the global plea agreement, neither she nor the district attorneys who tendered the global plea agreement knew of certain chief judge directives related to the disposition of county court matters in district court.[8] Furthermore, the undisputed evidence is that at least one county court judge made it a policy to encourage global dispositions in district court even though the county court cases had already been terminated by a plea agreement, in apparent contravention of these policies.

- Respondent believes that this matter has been "blown out of proportion." If Judge Colt would have accepted the global plea agreement as proposed, Respondent believes that she would have fully disclosed Judge Ackers position during the Rule 11 advisement. Further, even if Judge Colt had accepted the global plea agreement, the portion of the agreement that dealt with the probation revocation matters could have been vacated.

- Nevertheless, in hindsight, Respondent now understands why Judge Acker and Judge Colt felt that she had acted in an underhanded way on January 16, 2007. Respondent also acknowledged that she could have done more to provide a better record in Judges Colt and Judge Ackers courts. As a final point, Respondent testified that she would not have risked her license to resolve these probation revocation matters.

### Testimony of Judge Acker and Judge Colt

Judge Acker and Judge Colt believed that Respondent "intentionally misrepresented" Judge Acker's position on the global plea agreement in order to "manipulate" the judicial system and avoid a direct order that complied with directives mandated by the chief judge of the district court.[9] Judge Acker specifically believed that Respondent had attempted to circumvent his orders and that had Judge Colt proceeded to immediate sentencing as requested by Respondent, he would have never known of the disposition of the probation revocation matters.

Judge Acker and Judge Colt testified that they were unsure as to how to resolve the issues raised by Respondent's attempt to globally dispose of the probation revocation matters in contravention of Judge Acker's orders. Judge Acker and Judge Colt decided to meet with the chief judge of the district court and they asked him for direction. The chief judge directed them to report the matter to the People. Judge Acker initially reported the matter to the People, and later he and Judge Colt co-authored a disciplinary complaint against Respondent that detailed her actions their respective courts.

Judge Acker expressed that that he did not want to file a complaint against Respondent, but understood he had a *mandatory* obligation to do so after speaking with the People. Nevertheless, Judge Acker would have preferred to handle Respondent's misconduct by privately speaking with her in order to obtain assurances that it would never happen again.

### Testimony of Deputy District Attorney Laurel Huston

Laurel Huston served as the deputy district attorney in Division 1 during the relevant time period. Based on Mr. Quintana's ex-wife's statement that she would not testify against Mr. Quintana in the felony matter, Ms. Huston entered into renewed plea negotiations with Respondent. Ms. Huston eventually obtained authorization from her supervisor to reduce the felony charges against

This has been her experience for the last eleven years. In addition, on or about January 4, 2007, approximately two weeks before Respondent tendered the global plea agreement in Judge Colt's court, this clerk recalled telling Respondent in another domestic violence case that she would vacate a hearing date in her court after Respondent completed a district court global disposition.

8. *See* Stipulated Exhibits 20 and 21.

9. The record in these proceedings demonstrates that the El Paso County District Court and El Paso County Court are extremely busy with heavy dockets. In an apparent effort to deal with the processing and management of criminal matters pending in these courts, the chief judge of the district court issued two directives relied upon by Judge Acker and Judge Colt. *See* Stipulated Exhibits 20 and 21.

Mr. Quintana to a class 5 felony trespass. As part of the global plea agreement, the probation revocation matters would be unsuccessfully terminated without the imposition of a sentence. Ms. Huston prepared the written global plea agreement outlining these terms. In addition, Ms. Huston contacted the probation department and advised them that she and Respondent planned to ask Judge Colt for immediate sentencing following his acceptance of the global plea agreement without a pre-sentence report.

■ At the time she made this offer, Ms. Huston reviewed a minute order in the probation revocation matters that stated the probation revocation matters *were not to be transferred to district court.* In addition, Respondent disclosed to Ms. Huston that Judge Acker disapproved of transferring probation revocation matters to district court. Ms. Huston nevertheless agreed to include the probation revocation matters in the plea agreement if Respondent could arrange for their transfer to county court.[10] Ms. Huston also recalled that Respondent had told her that they could dispose all matters in district court if they and Judge Colt all agreed with the disposition.[11] However, Respondent did not tell Ms. Huston that Judge Acker had ordered Respondent not to attempt to transfer or resolve the probation revocation matters in district court.

### V. CONCLUSIONS OF LAW—SUBSTANTIVE ALLEGATIONS

The Hearing Board finds clear and convincing evidence that Respondent violated the following Colorado Rules of Professional Conduct.

*Respondent violated Colo. RPC 3.3(a)(1) (A lawyer shall not knowingly make a false statement of material fact to a tribunal.).*

■ When Respondent appeared before Judge Colt on January 16, 2007, she knew that Judge Acker opposed disposing the probation revocation matters as a part of the global plea agreement she and the deputy district attorney tendered to Judge Colt. Instead of candidly advising Judge Colt that Judge Acker opposed disposing of the probation revocation matters in such a manner, Respondent urged Judge Colt to accept the global plea agreement. The Hearing Board does not believe that Respondent was confusing Mr. Quintana's case with the case pending before another judge when she respondent to Judge Colt's questions.[12]

*Respondent violated Colo. RPC 8.4(c) (A lawyer shall not engage in conduct involving misrepresentation.).*

Examining the events leading up to hearing on January 16, 2006 in district court, the Hearing Board finds that Respondent knowingly *misrepresented* by commission and omission the substance of Judge Acker's order to Judge Colt.

*Respondent violated Colo. RPC 3.4(c) (A lawyer shall not knowingly disobey an obligation under the rules of a tribunal.).*

When Respondent agreed with the deputy district attorney to terminate the probation

---

10. As noted above, Respondent maintained that the district attorney was responsible for transferring Mr. Quintana's probation revocation matters to district court.

11. The Hearing Board notes, "Prosecutorial discretion is a hallmark of our criminal justice system that flows from the doctrine of separation of powers." *People in Interest of J.A.L.,* 761 P.2d 1137 (Colo.1988). "In order to preserve the required separation of powers, a prosecutor's charging decision may not be controlled or limited by judicial intervention." *People v. Bostelman* 141 P.3d 891, 897 (Colo.App.2005) citing *People v. Dist. Court,* 632 P.2d 1022 (Colo.1981). Respondents statement to Ms. Huston supports our conclusion that Respondent acted knowingly as opposed to negligently.

12. Both Respondent and the other judge's court clerk testified that they remembered the case before the other judge because it was the first time that judge had not recused himself from one of Respondent's cases. Additionally, Respondent testified she had mentioned Judge Acker's concerns to Ms. Huston the weekend before the hearing. Respondent's testimony also showed that at the time she was clearly pleased that the balance of power had shifted when Mr. Quintana's ex-wife refused to testify and that she viewed the negotiated plea agreement under which Mr. Quintana would serve no jail time as a win. Under these circumstances, Respondent's claim that she must have confused Mr. Quintana's case with another county court case pending before another judge simply is not credible.

revocation matters via a global plea agreement in Judge Colt's court, she knowingly acted in direct violation of Judge Acker's order.

*Respondent violated Colo. RPC 8.4(d) (A lawyer shall not engage in conduct prejudicial to the administration of justice.)i.*

We find that Respondent's "judge shopping" and failure to candidly disclose to Judge Colt or Judge Acker the proposed global plea agreement was prejudicial to the administration of justice. Judges rely on the counsel trustworthiness of counsel, especially in busy jurisdictions with heavy dockets. A lawyer who is not candid with the court gravely affects the effective administration of justice.

Finally, although our task in disciplinary proceedings is limited to addressing ethical questions, we reject the argument of Respondents counsel that Respondent was not required to follow Judge Ackers orders because they allegedly were illegal.[13] First, we do not believe that Judge Ackers orders interfered with Respondents or the district attorneys negotiation of plea agreements. They were free to negotiate whatever plea agreement they felt appropriate, subject of course to the courts duty to review and either accept or reject the negotiated plea. Judge Ackers orders merely ensured that any plea involving the misdemeanor probation revocation cases would be subject to his review. Second, Respondent admitted during her testimony that she did not consider the orders to be illegal at the time. Even if Respondent had considered the orders to be illegal at the time, that would not justify her simply ignoring them. Rather, Respondent would then have been under a duty to openly refuse to follow the orders, which Respondent admittedly did not do.[14]

## VI. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding

authorities for selecting and imposing sanctions for lawyer misconduct. The appropriate sanction depends upon the facts and circumstances of each case.

### Applicable ABA Standards

The Hearing Board considered the following standards in considering the appropriate sanction in this case.

ABA *Standard* 6.12 states in the absence of aggravating or mitigating circumstances and application of ABA *Standard* 3.0:

Suspension is generally appropriate when a lawyer *knows* that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding (emphasis added).

ABA *Standard* 6.22 states as follows:

Suspension is appropriate when a lawyer *knowingly* violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding (emphasis added).

However, before imposing a sanction after a finding of lawyer misconduct, ABA *Standard* 3.0 directs the Hearing Board to first consider the following factors to determine whether the presumed sanction is appropriate:

- The duty violated;
- The lawyer's mental state;
- The actual or potential injury caused by the misconduct; and
- The existence of aggravating or mitigating factors.

### A. THE DUTY VIOLATED

■■■ We begin with the proposition that members of the legal profession must adhere to the highest moral and ethical standards.

---

**13.** Respondent's counsel argued that Judge Acker's orders illegally interfered with counsel's ability to negotiate plea agreements.

**14.** *See* Colo. RPC 3.4(c).

These standards apply regardless of motive. Purposeful deception by an attorney is intolerable, even when it is undertaken as part of attempting to achieve what the attorney believes is the greater good. *See In re Pautler,* 47 P.3d 1175, 1176 (Colo.2002). Knowing misrepresentations of material facts to a court by an attorney invariably bears a potentially significant adverse effect on the legal proceeding, places the client at significant risk, demeans the profession and diminishes the public trust in the administration of justice.

■ The Hearing Board finds that Respondent violated duties as an officer of the court, the legal profession, and her client, even though Mr. Quintana did not suffer actual harm as a result of her actions.

■ The Hearing Board understands that the rigors of busy trial lawyer. Our ethical rules demand that a lawyer protect and defend clients with zeal. However, the lawyer must also be mindful of ethical obligations to the court and our legal system while navigating the administration of justice. *See People v. Schultheis,* 638 P.2d 8 (Colo.1981) citing *State v. Henderson,* 205 Kan. 231, 468 P.2d 136 (1970).

## B. THE LAWYER'S MENTAL STATE

■ The Hearing Board finds that Respondent acted *knowingly* when she misled Judge Colt about Judge Acker's position on including the probation revocation matters as a part of the global plea agreement. The Hearing Board also finds that Respondent knowingly disobeyed Judge Acker's orders and knowingly made a false statement of material fact when she told Judge Colt that *"if the cases were resolved by Judge Colt, someone just needed to "inform his [Judge Acker's] clerk" so the date could be vacated."* We specifically reject Respondent's testimony that she made this statement mistakenly referring to another case.

The evidence is clear and convincing that Respondent was acutely aware that Judge Acker intended to sentence Mr. Quintana consecutively to any sentence he might receive in Judge Colt's court, and that Judge Acker was not willing to transfer the county court cases to district court. However, the evidence is not clear and convincing that Respondent had a *conscious objective to deceive Judge Colt or disobey Judge* Acker's orders. Instead, the Hearing Board finds that Respondent's *misguided* efforts to resolve the probation revocation matters were primarily motivated by her deluded and cavalier attitude that resolving the felony matters was more important than Judge Acker's orders regarding the probation revocation matters.

Up until the weekend before the scheduled trial of Mr. Quintana's felony charges in district court, Respondents focus had been on negotiating a resolution of the felony charges that would result in the least amount of jail time for Mr. Quintana. Given the jail time that Mr. Quintana faced on the felony charges, Respondent paid little attention to them, and testified that the misdemeanor charges in Judge Ackers court were insignificant given the consequences of the habitual criminal charges then pending against Mr. Quintana.

However, once Mr. Quintana's ex-wife changed her position and refused to testify in the felony case, Respondent was in a much stronger bargaining position and was able to negotiate a plea agreement that would result in no jail time for Mr. Quintana. Respondent, and the district attorneys involved, felt that the negotiated plea agreement was a fair and just resolution of all of Mr. Quintana's criminal charges. It allowed the district attorneys office the option of charging Mr. Quintana as a three-time felon under the habitual criminal statute if he was charged with a felony in the future. But the plea bargain in question allowed Mr. Quintana to avoid any jail time. It also allowed both the state and Mr. Quintana to avoid the cost, risk and inconvenience necessarily associated with taking the felony case to trial or the misdemeanor probation revocation cases to hearing.

With these circumstances, Respondent believed that the global resolution of Mr. Quintana's felony and misdemeanor charges through the proposed plea agreement that she presented to Judge Colt in district court was in the best interest of her client (by

ensuring that he served no jail time) and the judicial system (by efficiently resolving all pending charges matters in one appearance in district court). Further, Respondent was proceeding in what she viewed as the normal, customarily accepted practice of resolving all pending charges in one proceeding, and did not believe that she was doing anything wrong.

Even if we accept Respondent's benign characterization of her actions, we are deeply troubled by Respondents casual disregard of Judge Ackers orders and her lack of candor in answering Judge Colts inquiries. The mere fact that Respondent believed that she was following the normal, customary practice to achieve a result that was in the best interests of her client and the judicial system does not justify or excuse her failure to comply with Judge Acker's orders or fully disclose Judge Acker's position to Judge Colt. It does, however, demonstrate it was not her specific intent to deceive the court or disobey a court order. *Pautler*, 47 P.3d at 1180.

Considering all of the circumstances presented, the evidence shows Respondent thought that she could finesse the situation and obtain Judge Colt's approval of the plea agreement by responding vaguely to his questions and by enlisting Ms. Huston's support in explaining to Judge Colt why the district attorneys office felt the global plea agreement was a fair and just disposition of all of Mr. Quintana's criminal charges.

## C. THE ACTUAL OR POTENTIAL INJURY

 The Hearing Board finds Respondent caused serious injury to our system of justice and the legal profession. The record is clear that the district and county courts in El Paso County contend with heavy dockets; deputy district attorneys literally require up to six banker boxes to carry files to court on some days. This strain on the justice system makes it imperative that dockets be processed in an efficient and just manner. Thus, the courts often rely on lawyers to provide them with candid direction. A lawyer's honesty and trustworthiness are core

values in our ethical rules. *Pautler*, 47 P.3d at 1176.

## D. AGGRAVATING AND MITIGATING FACTORS

### 1. MATTERS IN AGGRAVATION, ABA *STANDARD* 9.2

The Hearing Board considered evidence of the following aggravating circumstances in deciding the appropriate sanction.

#### Dishonest Motive—9.22(b)

 Respondent acted with a dishonest motive, short of the specific intent to deceive or disobey a court order, when she failed to fully advise Judge Colt of Judge Acker's position on the proposed disposition of the probation revocation cases in district court.

#### Pattern of Misconduct and Multiple Offenses—9.22(c) and 9.22(d)

 In failing to abide by Judge Acker's specific orders and fully disclosing his position about Mr. Quintana's proposed disposition to Judge Colt, Respondent engaged in a pattern of misconduct and multiple offenses.

#### Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g)

 In these proceedings Respondent belatedly acknowledged that she could have made a better record before Judge Acker and Judge Colt. Nevertheless, she still believes this matter was "blown out of proportion." The Hearing Board finds this attitude troubling and strongly suggests Respondent needs guidance in order to avoid future conflicts with the court.

#### Substantial Experience in the Practice of Law—9.22(i)

 Respondent has practiced law for nearly twenty years in Colorado. During this time, she has worked as a deputy public defender, and ADC in the El Paso County District Court and El Paso County Court. She should have appreciated the seriousness of disregarding Judge Acker's clear and unequivocal orders and her lack of candor in answering Judge Colt's questions about the global plea agreement.

## 2. MATTERS IN MITIGATION, ABA STANDARD 9.3

The Hearing Board considered evidence of the following mitigating circumstances in deciding the appropriate sanction.

### Absence of a Prior Disciplinary Record—9.32(b)

 The Hearing Board finds that Respondent has never appeared before this court in nearly twenty years of practice. The Hearing Board finds this to be a *substantial* mitigating factor. Respondent is involved in a high volume practice with many pitfalls as this case demonstrates. The fact that Respondent has never before appeared before this court is a significant factor in fashioning the appropriate sanction in this case.

### Cooperative Attitude Toward Proceedings—9.32(e)

Respondent demonstrated a cooperative attitude in these proceedings with the People and the Hearing Board.

### Analysis Under Case Law and ABA Standards

The Hearing Board finds that Respondent knowingly misstated and withheld information from Judge Colt and knowingly disobeyed an order from Judge Acker. Therefore, the Hearing Board looks to ABA *Standards* 6.12 and 6.22 as a starting point for our analysis.

The Hearing Board next looks to the Colorado Supreme Court's rationale in a case where they suspended a lawyer for three years for failing to disclose to the court that his client had previously been convicted of DWAI. *In re Cardwell,* 50 P.3d 897, 901 (Colo.2002). We also consider the Colorado Supreme Court's decision in a case where they found a lawyer's refusal to follow a court's order *a serious matter* calling for a substantial suspension and a redetermination of her fitness before being permitted to again practice law in this jurisdiction. *In re Roose,* 69 P.3d 43, 49 (Colo.2003).

 While Respondent's conduct, like that in *Roose* and *Cardwell* involved a knowing refusal to obey a court order and deceitful conduct in court, we nevertheless find that the need for a one year and one day suspension or greater sanction unnecessary for the following reasons:

- Respondent did not defiantly disobey a direct order while in the presence of the court, as did Ms. Roose. Instead, Respondent understood the court's order but rationalized that her actions were appropriate because she and the district attorney mutually agreed to a just and reasonable resolution to a troublesome case.

- Respondent was deceitful, however, her deceit was less egregious than that of Mr. Cardwell. Unlike Mr. Cardwell, Respondent was not convicted of a felony nor did the People advance the argument that her conduct amounted to a felony in these proceedings. Furthermore, Respondent, unlike Mr. Cardwell, made disclosures to the district attorney about Judge Acker's opposition. The district attorney then prepared the written plea agreement and presented it to the court.[15]

- While Respondent's responses to Judge Colt's inquiries were misleading, they were also *vague and confusing* while Mr. Cardwell's responses to the court were unequivocal.

- Finally, Judge Acker's testimony that he would have preferred to meet with Respondent privately and obtaining her assurances that she would not again engage in such misconduct, demonstrates the reasonableness of a shorter rather than a more lengthy suspension.

## VII. CONCLUSION

A lawyer's actions should always be grounded in honesty and candor whether

---

15. *See* Colo. R.Crim. P. 48(a) and *People v. Lichtenstein,* 630 P.2d 70, 73 (Colo.1981). While this substantive law might have provided Respondent with a good faith basis for challenging Judge Acker's order, she never openly challenged his order. Nevertheless, these circumstances are relevant to our consideration of the appropriate sanction.

dealing with opposing counsel, third parties, or the court. *Pautler*, 47 P.3d at 1180. Furthermore, respect for the court and its processes are necessary to preserve the rule of law and the dignity of our courts. While lawyers must zealously represent their clients, they must also do so within the rules of the adversary system as well as the Colorado Rules of Professional Conduct. Respondent's conduct falls short of these principles.

Nevertheless, Respondent has practiced for nearly twenty years without any record of misconduct. Further, the misconduct here appears to be isolated and, with the conditions ordered by the Hearing Board, this misconduct, we trust, is not likely to be repeated. Applying the ABA *Standards* and Colorado Supreme Court case law and the extenuating circumstances Respondent presented, we conclude that a ninety-days suspension with conditions is a sufficient sanction to protect the public and the administration of justice from further harm. *See In re Fischer*, 89 P.3d 817, 819 (Colo. 2004).

## VIII. *ORDER*

The Hearing Board therefore **ORDERS:**

1. **LARI JEAN TROGANI,** Attorney Registration No. 20008, is hereby **SUS-** **PENDED** from the practice of law for a period of **ONE YEAR AND ONE DAY, ALL BUT NINETY (90) DAYS STAYED** upon the successful completion of a two-year period of probation with conditions, effective thirty-one days from the date of this opinion. Respondent **SHALL** comply with all requirements of C.R.C.P. 251.28 and C.R.C.P. 251.29 applicable to the length of her suspension. Respondent **SHALL** not engage in any further violation of the Colorado Rules of Professional Conduct during the period of her probation.

2. Respondent **SHALL** attend and successfully complete the one-day ethics school sponsored by the People.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.